# Clark W. Hinsdale, Jr. v. Village of Essex Junction

[572 A.2d 925]

No. 87-335

Present: Allen, C.J., Peck, Gibson and Dooley, JJ., and Barney, C.J. (Ret.), Specially Assigned

Opinion Filed February 16, 1990

*William R. Marks*, Burlington, for Plaintiff-Appellant.

*Spokes, Foley & Stitzel*, Burlington, for Defendant-Appellee.

**Dooley, J.** Plaintiff, Clark Hinsdale, Jr., is the owner of a building which is located in the Village of Essex Junction, the defendant in this action. He was denied a zoning permit and appealed to the zoning board of adjustment, which also denied the permit. Although it notified plaintiff of its decision at the close of the hearing, the board did not send him a written copy of the decision within the forty-five-day time limit required by statute. When plaintiff treated the tardy action as approval and went forward with the requested use, defendant threatened criminal prosecution. This led to the present declaratory judgment action, in which plaintiff seeks a declaration that he acquired a zoning permit by operation of law and that the zoning board should have given him a permit. The superior court found for defendant, principally because plaintiff failed to appeal the zoning board denial, and plaintiff appealed to this Court. We affirm.

The relevant facts began in 1979, when plaintiff purchased the building in question. At that time, the village zoning ordinance allowed commercial uses of the building. Plaintiff used the majority of the first-floor space for commercial storage and his own office. On May 1, 1979, he rented 1,500 square feet for

use as a photographer's studio, and this use continued until the tenant vacated on June 1, 1982. Meanwhile, defendant rezoned the area, placing the building in a residential zone that does not allow commercial uses.

Plaintiff advertised continuously for a new tenant until he found one in November of 1984. The new tenant proposed to use the space for retail and office purposes and applied to the village zoning administrator for a permit to do so. In December of 1984, the zoning administrator refused the permit because the use was not permitted in the zone. In response to the tenant's claim that the use was permitted as a preexisting, nonconforming use, the zoning administrator found that the proposed use improperly enlarged the prior photographic studio use and that the former use had been discontinued for over six months, thus forfeiting the preexisting, nonconforming use status under the ordinance.

Plaintiff appealed to the village zoning board of adjustment, which held a public hearing on January 15, 1985. After the hearing, the board took a vote and denied the permit, essentially for the reasons specified by the zoning administrator. The decision was announced orally to both plaintiff and the tenant at that time. The board signed a notice of decision on February 19, 1985, but did not mail it to plaintiff until March 9, 1985. Plaintiff received it on March 11, 1985.

After plaintiff became aware of the board's decision at the hearing on January 15th, he applied for a variance. That application was heard and decided on February 19, 1985 and denied orally at that time. The negative written decision was signed on March 19, 1985 and sent to plaintiff on March 22, 1985.

Plaintiff took the position that the tenant's original permit application, based on preexisting, nonconforming use status, had been granted by operation of law because the written decision was not mailed to him within the time specified in the statute. He went forward with the proposed use without appealing either of the zoning board decisions. This led to a threat by the village to bring a criminal action based on the violation of the zoning ordinance. To resolve the dispute, plaintiff sought a declaratory judgment in December of 1985. The parties stipu-

lated to most of the relevant facts and plaintiff moved for summary judgment, arguing: (1) because the board failed to notify him of the denial of the permit within the statutory period, the permit must be deemed granted; (2) plaintiff was entitled to preexisting, nonconforming use status as a matter of law; (3) defendant's actions constituted a taking of plaintiff's property without due process of law; and (4) defendant's actions violated Chapter I, Article 2 of the Vermont Constitution. The trial court denied plaintiff's motion and granted judgment for defendant, primarily because it found that the suit was barred by plaintiff's failure to take a timely appeal from the zoning board action. The court also addressed plaintiff's constitutional claims and found them unmeritorious.

The trial court did not reach the merits of plaintiff's first issue, holding instead that plaintiff was precluded from raising it because he failed to appeal the zoning board's decision that he was not entitled to a permit as a preexisting, nonconforming use. We reach the same result, but do so on the merits of plaintiff's claim.* Plaintiff's claim is based on the decisional time limit statute, 24 V.S.A. § 4470(a), which provides:

(a) The board shall render its decision, which shall include findings of fact, within forty-five days after completing the hearing, and shall within that period send to the appellant, by certified mail, a copy of the decision. Copies of the decision shall also be mailed to every person or body appearing and having been heard at the hearing, and a copy thereof shall be filed with the administrative officer and the clerk of the municipality as a part of the public records thereof. If the board does not render its decision within the period prescribed by this chapter, the board shall be deemed to have rendered a decision in favor of the appellant and granted the relief requested by him on the last day of such period.

Plaintiff's position is that this statute granted him a permit on the forty-sixth day after the hearing and he had no obligation to appeal the later adverse ruling.

_____

* Since we do not reach the jurisdictional issue, we indicate no views on it.

It is important to emphasize the facts of this case. The board took its vote after the public hearing on January 15, 1985 and announced it to plaintiff. It signed its decision and findings of fact on February 19, 1985, well within the forty-five-day period established by 24 V.S.A. § 4470(a). The sole act that occurred outside the forty-five-day period was the mailing of the decision to plaintiff.

The deemed-approval remedy of § 4470(a) applies when the board does not "render" its decision within the forty-five-day approval period. Plaintiff relies upon *Glabach v. Sardelli*, 132 Vt. 490, 495, 321 A.2d 1, 5 (1974), for the proposition that the decision is not rendered until it is mailed to him. *Glabach* involved a factual pattern with some similarities to that present in this case, but also with some differences. In *Glabach*, the hearing was held on February 20, 1973, but the board did not vote on the appeal until March 13, 1973. The landowner had no notice of that vote until May 10, 1973 when the town's attorney notified the landowner's attorney. In response to the landowner's claim that the permit was approved by the failure of the board to act within forty-five days after the hearing, the town argued that the board's decision had been "rendered" on March 13, 1973, within the statutory time period.

The Court rejected the town's argument, holding instead that the zoning board decision was rendered only when notice of it was sent to the landowner. The language of the opinion that directly supports plaintiff's position states:

> [The statute] places the burden on a zoning board of adjustment not only to make a decision within the time provided but also to notify the appellant in writing of the decision within forty-five days from the time the appeal is heard. Only when both decision and notification are made within the forty-five day period is the judgment rendered. Further, if judgment is not rendered, as provided, the Legislature has plainly stated that the board shall have been deemed to have made a decision in favor of the appellant.

132 Vt. at 495, 321 A.2d at 5. We agree with plaintiff that under this language his permit would be deemed approved in this case. We believe, however, that the *Glabach* language sweeps

too broadly. We reaffirm the *Glabach* holding but narrow the rationale to better accord with the statutory language.

In *Glabach*, the landowner received no notice of the board's action within the forty-five-day period: The board's only decision was an oral vote, memorialized in the minutes of the meeting. It clearly did not qualify as a final decision. See *Nash v. Warren Zoning Board of Adjustment*, 153 Vt. 108, 113, 569 A.2d 447, 451 (1989). It is clear that an oral vote alone, without some form of notice to the applicant, does not constitute the act of rendering a decision under § 4470(a).

As plaintiff emphasizes, however, *Glabach* went further and stated that a decision is not rendered until written notice of it is given to the landowner. For three reasons, we find that construction of § 4470(a) to be too broad.

First, it is inconsistent with the wording of the statute. In construing a statute, our first responsibility is to give effect to the plain meaning of the words chosen by the Legislature. See, e.g., *State v. Saari*, 152 Vt. 510, 519, 568 A.2d 344, 350 (1989). The wording chosen by the Legislature clearly separates the giving of written notice from the rendering of the decision. The first sentence of § 4470(a) states that the "board shall render its decision . . . and shall . . . send to the appellant, by certified mail, a copy of the decision." It is directly inconsistent with the statutory language to say that a decision has not been rendered until it is sent to the landowner as required by § 4470(a). Since the deemed-approval remedy is applicable only when the board fails to "render its decision within the period prescribed by this chapter," the statute cannot be read to deem approval on failure to give written notice within forty-five days of the hearing. The Legislature has not created a deemed-approval remedy for failure to give written notice of a decision within forty-five days, and, therefore, we must conclude that the notice time limit is directory. See *In re Mullestein*, 148 Vt. 170, 174, 531 A.2d 890, 892–93 (1987).

Second, we believe that we would go beyond the statutory intent of the deemed-approval remedy if we were to apply it in this case. The purpose of the statute is to "'remedy indecision and protracted deliberations on the part of zoning boards

and to eliminate deliberate or negligent inaction by public officials.'" *In re Fish*, 150 Vt. 462, 464, 554 A.2d 256, 258 (1988) (quoting *In re Grace Bldg. Co.*, 42 Pa. Commw. 589, 593, 401 A.2d 407, 408 (1979)). This case involves neither indecision nor protracted deliberation. The defect in the board's action was in not sending the written notice in a timely fashion to the landowner. In this way, the case is similar to *Fish* where we found that the flaw in the landowner's "argument is that it extends the statutory approval remedy to technical defects in the notice provided." *Id.* at 465, 554 A.2d at 258. We found, therefore, that the application of the deemed-approval remedy "would go far beyond the intent of the Legislature." *Id.*; see also *Nash*, 153 Vt. at 115, 569 A.2d at 452 (inappropriate to use deemed-approval remedy where landowner's claim is that the "board had inadequate grounds to reopen the proceedings"); *In re Knapp*, 152 Vt. 59, 65, 564 A.2d 1064, 1067 (1989) ("we have cautioned that such statutes should be applied only where their application is clearly consistent with statutory intent").

In this case, plaintiff was clearly given oral notice of the board's action well before he received the written notice. Indeed, he acted on the board's decision by going forward with a variance request. We do not believe that applying a deemed-approval remedy in such a circumstance is clearly consistent with statutory intent.

Third, the *Glabach* decision was concerned that a landowner would lose the right to appeal if a decision were rendered without notice to him. Thus, the Court noted that:

> If a board of adjustment could make a decision affecting the rights of an appellant, bury it in the minutes of a meeting, and neglect to comply with the notification requisites of the statute, the thirty-day period given to an appellant might well go by without his having knowledge of the purported judgment. It would also be true that if the judgment were considered rendered at the time of the decision, but notification was made, say, some thirty days after the decision of the board, the same result could follow.

132 Vt. at 495, 321 A.2d at 5. Since *Glabach*, we have ruled in *Nash*, 153 Vt. at 113–14 n.5, 569 A.2d at 451 n.5, that the appeal

period does not begin to run at the time the board takes its vote. Thus, the concern expressed in *Glabach* is no longer valid. While it is true that a board could render a written decision, enter it by filing it with the clerk, and cut off appeal rights by failing to notify the landowner, that risk exists in a trial court. See V.R.C.P. 77(d) (clerk required to give notice of entry of judgment but failure to do so does not affect the time to appeal). In any event, a landowner with actual notice of a decision, as here, can file a notice of appeal, relying on the oral decision even though entry of judgment comes later. See V.R.A.P. 4 (notice of appeal filed before entry of judgment considered to be filed on the day of entry).

Based on the above reasons, we narrow the language of *Glabach* and hold that a zoning board decision can be considered rendered before notice is mailed to the applicant if the board has made a decision and given the parties actual notice of its action before the expiration of the forty-five day period, regardless of when the decision is reduced to writing. The decision in this case was rendered within the statutory period; therefore, plaintiff is not entitled to the deemed-approval remedy. The decision of the board denying plaintiff a permit must stand.

Plaintiff's second argument is that the zoning board decision was wrong and he was entitled to preexisting, nonconforming use status as a matter of law. Plaintiff had the opportunity to appeal the board's decision to superior court, 24 V.S.A. § 4471, but failed to do so. Under 24 V.S.A. § 4472(a), an appeal to superior court is "the exclusive remedy of an interested person with respect to any decision . . . under this chapter." In order to emphasize the exclusivity of the remedy, the Legislature added a subsection (d) that specifies that in the absence of an appeal, all parties are bound by a board decision and "shall not thereafter contest, either directly or indirectly . . . such decision of the board in any proceeding." It is clear that plaintiff's exclusive remedy to attack the board decision was to appeal and the failure to do so forecloses further review. See *McGlynn v. Town of Woodbury*, 148 Vt. 340, 343, 533 A.2d 1187,

1189 (1987). Accordingly, we do not reach the merits of plaintiff's second argument.

Plaintiff's third argument is that the imposition of the defendant's zoning ordinance has denied him all practical use of his property. Again, we note that plaintiff has failed to appeal to superior court either the original permit decision or the decision denying him a variance. Thus, plaintiff would normally be foreclosed from appellate review in this declaratory judgment action. To the extent this argument attacks the constitutionality of a "bylaw or development plan," however, it remains available to him under 24 V.S.A. § 4472(b) despite his failure to appeal the zoning board denial of his permit.

■ We have upheld zoning regulations as a valid exercise of the police power. See *Galanes v. Town of Brattleboro*, 136 Vt. 235, 240, 388 A.2d 406, 409 (1978). This power is "conditioned on there remaining in the owner some practical use of his land, and the existence of a public good or benefit of sufficient magnitude to justify the burdening of the affected property." *Id.* Zoning restrictions may extend to "reasonable regulation or prohibition of expansion or undue perpetuation of pre-existing, nonconforming uses and structures." *State v. Sanguinetti*, 141 Vt. 349, 351, 449 A.2d 922, 924 (1982).

■ Plaintiff's main attack is on defendant's preexisting, nonconforming use provisions that prevent the restoration of a nonconforming use if it has been discontinued for a period of six months or more. As we held in *Sanguinetti*, reasonable zoning regulations that prevent the "undue perpetuation" of preexisting, nonconforming uses are constitutionally valid. See 24 V.S.A. § 4408(b). Nonconforming uses are inconsistent with the purpose of zoning and are tolerated only because they are antecedent to the applicable zoning provisions. A goal of zoning must be to phase out such uses. See *In re McCormick Management Co.*, 149 Vt. 585, 590, 547 A.2d 1319, 1322 (1988); *Vermont Brick & Block, Inc. v. Village of Essex Junction*, 135 Vt. 481, 483, 380 A.2d 67, 69 (1977). There can be no question that the public interest is strong and supports the regulation. See *Francisco v. City of Columbus*, 31 N.E.2d 236, 241–42 (Ohio App. 1937). In the words of the recent United States Supreme Court

decisions on regulatory takings, the regulation "substantially advances legitimate state interests." See *Nollan v. California Coastal Comm'n*, 483 U.S. 825, 834 (1987); *Agins v. City of Tiburon*, 447 U.S. 255, 260 (1980).

Plaintiff argues, however, that he has been left with no practical use of his property and this means that the ordinance is unconstitutional as applied to him. On this point, he argues from the fact that he was also denied a variance despite a board finding that the rental unit involved could not be used alternatively for residential occupancy consistent with the ordinance. As with the initial permit denial, plaintiff has failed to appeal the denial of the zoning variance. In essence, he is repackaging his request for a variance as a constitutional attack. As noted above, 24 V.S.A. § 4472(b) allows plaintiff to attack the constitutionality of a provision of the zoning ordinance; it does not authorize a constitutional attack on the application of the ordinance to his particular facts. We think that distinction is significant because a landowner can often restate a request for a permit in terms of such necessity that the denial might rise to a constitutional deprivation. To consider such constitutional issues through a collateral attack taken many months after the decisions involved would be to undermine the finality and stability the Legislature has sought by enacting 24 V.S.A. § 4472. Cf. *Boutwell v. Town of Fair Haven*, 148 Vt. 8, 10–11, 527 A.2d 225, 226 (1987). If plaintiff seriously thought he had been denied all practical use of his property by the two zoning board decisions in this case, his remedy was to appeal one or both of those decisions.

Plaintiff's final argument is that the zoning decisions in this case are establishing plaintiff's property as "subservient to public uses" without a showing of necessity in violation of Chapter I, Article 2 of the Vermont Constitution. We believe that this claim is barred for the same reason that much of the federal constitutional claim is barred. Plaintiff attacks the individual decisions made by the zoning board in applying the zoning regulations and the variance provisions to his individual facts be-

cause there has not been a "showing of necessity on a case by case basis." We believe that he had to raise this claim by appeal, and since he failed to do so, he is now foreclosed from raising it by collateral attack.

*Affirmed.*