William H. CONWAY, Jr., and
Gordon B. MacArthur

v.

William SORRELL, Secretary of the
Vermont Agency of Administration,
and State of Vermont.

Civ. A. No. 5:94–309.

United States District Court,
D. Vermont.

Aug. 7, 1995.

John S. Cameron, Paterson and Walke, P.C., Montpelier, VT, for plaintiffs.

Jeffrey L. Amestoy, Attorney General, State of Vt. and John W. Malley, Jr., Vt.

Attorney General's Office, Montpelier, VT, for defendant Sorrell.

Jeffrey L. Amestoy, Attorney General, State of Vt., William E. Griffin, and John W. Malley, Jr., Vt. Attorney General's Office, Montpelier, VT, for defendant State of Vermont.

## OPINION–ORDER

BILLINGS, Senior District Judge.

Cross–Motions for Summary Judgment bring this matter to the Court's attention. Each party has filed opposition to the other party's Motion for Summary Judgment. In addition, Plaintiffs have requested oral argument pursuant to Local Rule 5(a)(4). Because the Court finds that oral argument will not materially assist our decision, we will proceed to rule on the papers.

## I. FACTUAL BACKGROUND

Plaintiffs are the directors of two divisions within the Vermont Agency of Transportation ("AOT"). Plaintiff William H. Conway, Jr., is the Director of the Transportation Administration and Support Services Division. Plaintiff Gordon B. MacArthur is the Director of the Transportation Planning and Preconstruction Division. They claim that their constitutional and contractual rights were violated when the 1994 Vermont Legislature converted their jobs from "classified" to "exempt" status. Defendants contend that Plaintiffs had no employment contract with the State and that the Legislature was legitimately exercising its authority when it reclassified Plaintiffs' positions.

■ The employment rights of most Vermont employees are governed by the State's classified personnel system. *See* 3 V.S.A. Ch. 13. The classified employment system is founded upon "merit principles" that are intended to recruit, select, and advance employees on the basis of their relative abilities. *Id.* at §§ 310(f), 312(b). The system provides job tenure for classified employees, "contingent on successful performance." *Id.* at 312(a). According to the rules adopted to implement the system, job tenure means that "[a]n employee will not be subject to dismissal or suspension except for cause stated in writing to the employee." Vermont Rules and Regulations for Personnel Administration, Ch. 3.03. ("Personnel Regulations"). By their own terms, the Personnel Regulations continue only until the Legislature amends, modifies, or repeals either the personnel law or the regulations. *Id.* at Ch. 1.02. Thus, as classified employees, Plaintiffs had a right to continued employment unless there was just cause for dismissal, at least as long as the Vermont Legislature did not modify the classification system.

In addition to protections afforded by the classified personnel system, most State employees are union members who enjoy the rights secured by a collective bargaining agreement. *See* 3 V.S.A. Ch. 27. Although Plaintiffs were within the classified system, they were not union members and were therefore not directly covered by the collective bargaining agreement. *Id.* at §§ 311(a), 902(5)(F). Nevertheless, Plaintiffs did retain the same right that bargaining unit employees had to appeal employment issues to the Vermont Labor Relations Board ("VLRB"). *Id.* at § 1001(b); Personnel Regulations at Ch. 3.03. Additionally, Plaintiffs often received benefits similar to those received by the unionized employees because the Department of Personnel regularly extends the benefits of the collective bargaining agreement to employees who are not members of a bargaining unit.[1] For example, The Department of Personnel's "Extension of Benefits" memorandum of August 5, 1992 ("Benefits Memorandum") granted to Plaintiffs and other non-union employees benefits that the union had gained in such areas as compensation, holidays and tuition reimbursement. *See* Plaintiffs' Ex. 2 at 2. Like the underlying collective bargaining contract upon which it was based, the benefits extended in the

---

1. The Department of Personnel is authorized to extend benefits in this manner by 3 V.S.A. § 2222(f).

August 5, 1992 memorandum were was valid for two years, through June 30, 1994.[2]

On June 9, 1994, the legislative amendment which converted Plaintiffs' positions from classified to exempt was inserted into House Bill 864 ("H.864"), the conference version of the 1995 Omnibus Appropriations Bill.[3] Plaintiffs allege, and Defendants have not disputed, that Defendant Sorrell caused the amendment to be appended to the budget bill. Both the AOT Secretary and the Chairman of the House Transportation Committee were out of state at the time, and neither had any prior knowledge of the amendment.

The next day, after learning of the amendment and how it would affect their jobs, Plaintiffs went to the State House and met Defendant Sorrell in the Transportation hearing room. According to Plaintiffs, Conway asked Sorrell: "What do you want to do, fire us?" Sorrell did not respond, but Plaintiffs allege that they interpreted his silence to mean "yes."

A short time later, Conway drafted language that would have "grandfathered" the changes to their positions. This would have preserved the rights and civil service status of the incumbents until they left office, at which point the changes would become effective. Plaintiffs presented this suggestion to Senator Doyle, Chairman of the Senate Government Operations Committee, and Senator Mazza, Chairman of the Senate Transportation Committee. Plaintiffs allege that Defendant Sorrell observed them approach Senators Doyle and Mazza with the proposed "grandfathering" language, and that Sorrell then told the Senators: "I don't think we want to do that." Plaintiffs claim that Sorrell otherwise declined to discuss the matter

in their presence, but that he later met privately with certain Senators.

H.864 was the last substantive measure approved by the 1994 legislature. Because it was a Committee of Conference bill, individual elements of it could not be amended on the floor. The House and Senate were required to either adopt the Appropriations Act in its entirety, or reject it and extend the 1994 Session. The Legislature passed the Act at approximately 3:21 a.m. on Sunday, June 12, 1994. The amendment which transferred Plaintiffs' positions from classified to exempt service was never debated in Committee or by the full House or Senate.

The bill made the changes in Plaintiffs' job status effective on July 1, 1994.[4] As a result of the legislation, Plaintiffs lost their right to file grievances with the VLRB, and their right to retain their jobs absent just cause for termination. Plaintiffs now serve "at the pleasure of the Secretary of Transportation," and therefore may be dismissed at any time, for any reason, or for no reason at all. Plaintiffs allege, and Defendants do not dispute, that they are the first Vermont employees to be transferred from classified to exempt status without being grandfathered.

On October 21, 1994, Plaintiffs filed this action pursuant to 42 U.S.C. § 1983, requesting that the Court declare Section 238a of the Act unconstitutional and reinstate the rights and privileges that Plaintiffs enjoyed in their AOT positions before passage of the Act. Plaintiffs claim that passage of the Act breached their employment contract, impaired their constitutional right of contract, deprived them of vested property rights

2. Collective bargaining agreements between the State of Vermont and its unionized employees are permitted for a maximum term of two years. 3 V.S.A. § 982(a).

3. The Bill changed four of the five AOT Division Director positions from classified to exempt service. The position which remained classified was the Director of Air, Rail, and Public Transportation.

4. The bill provided, in pertinent part:

§ 238a. TRANSPORTATION; EXEMPT POSITIONS

(a) Effective July 1, 1994, the positions of TA–0007, Transportation Construction and Maintenance Director; TA–0004, Transportation Administration and Support Services Director; TA–0008, Transportation Planning and Preconstruction Director for Engineering; and TA–0022, Transportation Planning director, shall be exempt from the classified service, and not subject to the provisions of 3 V.S.A. chapters 13 and 27. Persons employed in those positions on June 30, 1994 and thereafter shall serve at the pleasure of the Secretary of Transportation.
2 Journal of the Vermont House (1994 Adj. Session) 1594.

without compensation, and violated their rights to due process and equal protection of the law. Defendants deny all of Plaintiffs' allegations, maintaining that the Vermont Legislature complied fully with the law when it passed the Act in 1994.

## II. DISCUSSION

### A. STANDARD OF REVIEW

■ Summary judgment is appropriate when the Court finds that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The party opposing summary judgment may not rest on its pleadings but must present "significant probative evidence" demonstrating that a genuine dispute of material fact exists, and that the moving party is not entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The Court must view these materials in the light most favorable to the non-movant, drawing all reasonable inferences in the non-movant's favor. *Id.* at 255, 106 S.Ct. at 2513.

In the present case, Defendants have moved for summary judgment on the Contract Clause and common law breach of contract counts, and on the counts under the Takings, Due Process, and Equal Protection Clauses. Plaintiffs have filed opposition to Defendants' Motion regarding the takings and contract claims, and have filed a Cross–Motion for Summary Judgment on the remaining constitutional counts. The Court will address each count seriatim.

### B. CONTRACT CLAUSE AND BREACH OF CONTRACT

Defendants argue that Plaintiffs' contract claims must be dismissed because the Plaintiffs never had an employment contract with the State of Vermont. Plaintiffs concede that there was no express contract between the parties, but argue that state statutes,

regulations, and policy memoranda established contractual terms of employment.

■ It is axiomatic that the existence of a contract must first be established before a claim may be pursued under the Contract Clause, *Indiana ex rel Anderson v. Brand,* 303 U.S. 95, 100, 58 S.Ct. 443, 446, 82 L.Ed. 685 (1938),[5] or for breach of contract. *See Ross v. Times Mirror, Inc.,* 665 A.2d 580 (Vt.1995); *Bemis v. Lamb,* 135 Vt. 618, 620, 383 A.2d 614 (Vt.1978). With respect to claims that a contract has been created by statute, the Supreme Court has consistently held "that absent some clear indication that the legislature intends to bind itself contractually, the presumption is that a 'law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise.'" *National R.R. Passenger Corp. v. Atchison, Topeka & Santa Fe Ry. Co.,* 470 U.S. 451, 465–66, 105 S.Ct. 1441, 1451, 84 L.Ed.2d 432 (1985) (*quoting Dodge v. Board of Educ.,* 302 U.S. 74, 79, 58 S.Ct. 98, 100, 82 L.Ed. 57 (1937)). The Court explained "(t)hat this well-established presumption is grounded in the elementary proposition that the principal function of a legislature is not to make contracts, but to make laws that establish the policy of the state." *Id.* at 466, 105 S.Ct. at 1451 (citing *Brand,* 303 U.S. at 104–05, 58 S.Ct. at 448).

■ In the present case, it is clear that Plaintiffs have failed to overcome the presumption and establish that there are genuine issues of fact as to whether the Vermont Legislature clearly and unequivocally intended to bind itself contractually through its public employment statutes and regulations. Although it was the Legislature's policy to limit itself to just cause dismissal for classified employees, *see* 3 V.S.A. § 312(a), Personnel Regulations at Ch. 3.03, the Legislature and the Personnel Department specifically retained the right to amend and modify the policy. *See* Personnel Regulations at Ch. 1.03. As the Supreme Court pointed out, expressly reserving the right to repeal, alter

**5.** The Contract Clause provides that "(n)o State shall ... pass any ... (l)aw impairing the (o)bli- gation of (c)ontracts." U.S. CONST. Art. I § 10.

or amend a statute "is hardly the language of contract." *Atchison*, 470 U.S. at 467, 105 S.Ct. at 1452. In addition, as Plaintiffs concede, it was not unusual for the Legislature to reclassify the status of a public employment position.[6] When the Legislature decided to take that step with respect to Plaintiffs' positions, it was merely exercising its expressly reserved right to modify the personnel law.

Plaintiffs further contend that their contract with the state is evidenced by the August 5 Benefits Memorandum, which extends certain privileges to Plaintiffs while using the word "contract" on two occasions. The Court initially observes that the Benefits Memorandum was only valid until June 30, 1994. Thus, even if the Benefits Memorandum was part of a contract with Plaintiffs, it was no longer in effect when their positions were reclassified on July 1, 1994. In any event, the Supreme Court rejected the argument that "the frequent usage in a statute of the language of contract, including the term 'contract,' evidences an intent to bind the ... Government contractually." *Id.* In fact, it is clear that the term "contract" in the Benefits Memorandum actually refers to the collective bargaining agreement between the State and its unionized employees, not to any alleged contract with non-unionized employees such as the Plaintiffs. The memorandum is, therefore, an exercise by the Personnel Department of its legislatively granted authority to extend the benefits of contracted employees to non-contract employees such as the Plaintiffs.[7] *See* 3 V.S.A. § 2222(f).

Plaintiffs rely on *Taylor v. National Life Ins. Co.*, 161 Vt. 457, 652 A.2d 466 (Vt.1993), to support their theory that conflicting or ambiguous provisions in the statutes, regulations, and administrative memoranda are sufficient to raise a jury question regarding the existence of a just cause employment contract. This argument overlooks the critical distinction that *Taylor* involved a private employer and was grounded on policies specific to that context, while the present case involves statutes and rules promulgated under legislative authority to regulate public employment. As the Supreme Court persuasively reasoned in *Atchison*, "to construe laws as contracts when the obligation is not clearly and unequivocally expressed would be to limit drastically the essential powers of a legislative body." 470 U.S. at 466, 105 S.Ct. at 1451. Plaintiffs are essentially asking the Court to extend *Taylor* beyond its private employment confines to encompass the Vermont Legislature's statutory oversight of public employment. In light of the Supreme Court's decisions in *Atchison* and *Dodge*, we decline to do so, and instead reaffirm that a statute does not bind the legislature contractually unless that is the legislature's clear and unambiguous intent.

Viewing the facts in the light most favorable to the Plaintiffs, there can be no doubt that the Legislature did not clearly and unambiguously intend its public employment statutes, regulations and administrative letters to form a contract with the Plaintiffs. On the contrary, it appears that the Vermont Legislature's intention was to refrain from establishing employment contracts with classified managers such as the Plaintiffs. Since the Legislature's intent to form a contract was neither clear nor unequivocal, the Court concludes, as a matter of law, that no employment contract existed between Plaintiffs and the State of Vermont. In the absence of a contract, Plaintiffs are precluded from making a claim either under the Contract Clause or for breach of contract, and Defendants' Motion for Summary Judgment on those counts must therefore be GRANTED.

---

6. Plaintiffs argue, however, that the Legislature had never reclassified a position without grandfathering the incumbent. While this may be so, there is no language in the personnel statutes or regulations suggesting that any individual enjoyed a contractual right to be grandfathered in the event of a personnel reclassification.

7. It seems clear that if the Legislature had intended or desired to establish a contractual relationship with Plaintiffs and other employees in their position, it could have done so. Instead, the Legislature chose to extend the contractual benefits of the collective bargaining agreement to non-contracted employees. This suggests that the Legislature intended to maintain a non-contractual relationship with classified managers such as the Plaintiffs.

## C. TAKINGS CLAUSE

As explained In Part I, *supra*, classified employees such as Plaintiffs enjoyed the right to retain their positions absent dismissal for cause. As we explained in Part II–B, *supra*, this right was statutory, not contractual, and it was removed by statute when the Legislature reclassified Plaintiffs' positions. Plaintiffs argue that the removal of their right to just cause employment violated the Fifth Amendment by taking their property without just compensation.[8] Defendants counter that, absent a contractual right, a change in the conditions of employment does not give rise to a claim under the Takings Clause. The Court agrees.

The Constitution bars the government from taking private property without just compensation. U.S. CONST. Amend. 5. It is well established, however, that "(n)oncontractual employee benefits that a recipient has not yet received, but has a mere expectation of receiving, are not property as to which the government, before repealing, must provide just compensation." *Hoffman v. City of Warwick*, 909 F.2d 608, 616 (1st Cir.1990). *See also, U.S. R.R. Retirement Bd. v. Fritz*, 449 U.S. 166, 174, 101 S.Ct. 453, 459, 66 L.Ed.2d 368 (1980) (benefits such as railroad retirement and social security benefits are noncontractual and therefore may be altered or eliminated at any time without violating Fifth Amendment); *Kizas v. Webster*, 707 F.2d 524, 539 (D.C.Cir.1983) (legitimate claim of entitlement to government benefit does not transform the benefit itself to a vested property right protected by the Takings Clause).

In the present case, Plaintiffs received the right to just cause employment until June 30, 1994. The benefit for which they seek compensation is the right to maintain that employment system. They therefore seek a future benefit, a right to continue to enjoy this particular employment term in the future as they have in the past. However, the cited cases reiterate that, absent a contract, there is no property right under the Takings Clause to the perpetual continuation of public employment benefits; rather, the government may revoke such benefits at any time without paying compensation.

Plaintiffs' Takings Clause claim seeks compensation for the Vermont Legislature's removal of their right to continue as just cause employees. However, this type of future employee benefit does not rise to the level of property protected by the Takings Clause. Since Plaintiffs lack a compensable property interest protected by the Takings Clause, Defendants Motion for Summary Judgment on that count must be GRANTED.

## D. PROCEDURAL DUE PROCESS

Plaintiffs argue that their rights to procedural due process were violated when the Legislature inserted the provisions at issue during the waning hours of the 1994 session without properly considering the matter. Defendants maintain that the legislative decision itself satisfied the requirements of procedural due process.

The Fourteenth Amendment provides, in pertinent part, that no person shall be deprived of property without due process of law. U.S. CONST. Amend. 14. It is well settled, and the parties do not dispute, that the right to just cause employment is a property interest for purposes of the Due Process Clause. *Perry v. Sindermann*, 408 U.S. 593, 602–03, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570 (1972); *Bd. of Regents v. Roth*, 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972). Since Plaintiffs were clearly deprived of their right to just cause employment, the question presented is whether that deprivation complied with due process.

When a legislature eliminates or changes statutory entitlements on a class-wide basis, "the legislative determination

---

**8.** Plaintiffs also state a claim under Ch. I, Art 2 of the Vermont Constitution, which requires compensation "whenever any person's property is taken for the use of the public." Because the federal and Vermont Constitutions use virtually the same test for takings review, *Timms v. Vermont*, 139 Vt. 343, 344–45, 428 A.2d 1125 (1981), *Hinsdale v. Village of Essex Junction*, 153 Vt. 618, 627, 572 A.2d 925 (1990), our analysis applies to Plaintiffs' claims under both the Fifth Amendment and Article 2.

provides all the process that is due." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 433, 102 S.Ct. 1148, 1156, 71 L.Ed.2d 265 (1982). *See also Atkins v. Parker*, 472 U.S. 115, 127, 105 S.Ct. 2520, 2527, 86 L.Ed.2d 81 (1985) (no procedural due process violation where Congress did not afford food stamp recipients a hearing before making system-wide change in eligibility computation that would likely cause reduction in benefits); *Story v. Green*, 978 F.2d 60, 63 (2d Cir.1992) (having enacted statute that creates right to public benefits, legislature retains power to enact new legislation altering or eliminating the right). Thus, when general policy determinations of this nature are made, "the legislative process affords all the procedural due process required by the constitution." *Gattis v. Gravett*, 806 F.2d 778, 781 (8th Cir.1986).

■■■■■ However, as the United States Supreme Court indicated in *Logan*, the principle that the legislative determination satisfies due process is not necessarily true if due process is invoked to "protect[ ] the *individual* citizen from state action that is wholly arbitrary or irrational." 455 U.S. at 433, 102 S.Ct. at 1156 (emphasis added). Similarly, the *Atkins* Court indicated that the general rule would not apply if the claimant questioned the procedural fairness of an individual determination and alleged that the legislative process itself had been somehow defective. 472 U.S. at 129, 130, 105 S.Ct. at 2528, 2529. *See also Story*, 978 F.2d at 63 (citing *Atkins* and reiterating that general rule applies "absent any indication of some defect in the legislative process"). Thus, a due process claim is available when the legislature deprives property rights with legislation that is targeted at a particular individual or small group of individuals, or that was adopted during the course of a legislative process that was somehow defective.

■■■■ In the present case, Defendants claim that the Legislature was merely making a general policy decision modifying the job classification of the majority of division directors at AOT. Plaintiffs respond that the decision was an individual one, affecting only four division directors at the Agency, and leaving unchanged the job classifications of all other public employees at the AOT and in the state government generally. Plaintiffs further allege that the legislative process was defective with respect to the reclassification decision because it was targeted at them individually. Plaintiffs point to several facts to support this allegation: the measure was added without hearing or debate to an unrelated budget bill late in the evening of the final days of the 1994 session; Plaintiffs were never officially provided notice of the change; key decision makers (including the AOT head) were out of state when the decision was made; Defendant Sorrell would not respond when Plaintiffs confronted him and asked if the reclassification was an attempt to fire them; Defendant Sorrell would not speak to Plaintiffs concerning the matter in front of the other Senators, but allegedly conferred with legislators later in private about Plaintiffs' positions; and Defendant Sorrell refused to grandfather the change, despite the fact that this had always been the practice. This dispute over the facts is a material and significant one, because whether the reclassification was a general one or one targeted at the individual Plaintiffs will determine whether Plaintiffs should have been afforded such due process rights as notice and a hearing before the Legislature took the action that it did.

As the preceding discussion indicates, there are genuine disputes of material fact concerning whether the Legislature's reclassification decision was a general policy change or whether it was an individual determination targeted at Plaintiffs. The Court therefore concludes that further discovery is appropriate to resolve this dispute, and that summary judgment is premature at this time. As a result, both Plaintiffs' and Defendants' Motions for Summary Judgment on the procedural due process count are hereby DENIED.

## E. SUBSTANTIVE DUE PROCESS

Plaintiffs contend that the Vermont Legislature's decision to reclassify their positions was an arbitrary and irrational exercise of power that violated their rights to substantive due process. Defendants respond that the Legislature exempted four AOT management positions from the classified service

because it rationally and reasonably concluded that it would make the management structure at AOT consistent with that of other state agencies.

Substantive due process, by "barring certain government actions, regardless of the fairness of the procedures used to implement them ..., serves to prevent governmental power from being 'used for purposes of oppression.'" *Daniels v. Williams,* 474 U.S. 327, 331, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986) (quoting *Murray's Lessee v. Hoboken Land & Improvement Co.,* 18 How. 272, 277, 15 L.Ed. 372 (1856)). Under the doctrine, state action that impairs a property interest protected by the Fourteenth Amendment may not be arbitrary or capricious, but must have a rational relationship to a legitimate government purpose. *Gargiul v. Tompkins,* 704 F.2d 661, 668 (2d Cir. 1983); *Newman v. Massachusetts,* 884 F.2d 19, 25 (1st Cir.1989); *Comm. of United States Citizens Living in Nicaragua v. Reagan,* 859 F.2d 929, 943–44 (D.C.Cir.1988). The burden is on the one complaining of the due process violation "to establish that the legislature has acted in an arbitrary and irrational way." *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 15, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752 (1976). Reclassifying a tenured employee's job so that the government may avoid its due process obligations to provide notice and a hearing prior to termination is neither a rational nor a legitimate government purpose. *See Dwyer v. Regan,* 777 F.2d 825, 829–30 (2d Cir.1985).

Plaintiffs have carried their burden of establishing a genuine factual dispute with regard to the Vermont Legislature's purpose for reclassifying their jobs. Defendants claim that the reclassification was simply a proper legislative reorganization designed to make the structure of the AOT more consistent with that of other state agencies. Plaintiffs, however, allege that Defendants' argument is pretextual, and that they were transferred to exempt status so that they could be fired without cause. As discussed in part II–D, *supra,* Plaintiffs have set forth a series of factual allegations to support their claim. They refer, for example, to Defendant Sorrell's refusal to answer when Plaintiffs asked him if the reclassification meant they were to be fired, and to Sorrell's advice to Senators Doyle and Mazza that they should not grandfather Plaintiffs' job status.[9] Sorrell provided no explanation for his opinion that the Legislature should, apparently for the first time, refuse to grandfather a tenured employee. The only explanation that Defendants provide now is that the decision was a discretionary one, and that grandfathering "could have frustrated the intent of the legislature by delaying the change and freezing the management structure of the Agency for many years, limited only by the longevity of the incumbents." Affidavit of Charly Dickerson, Human Resources Director, Vermont Department of Personnel, at 8. Defendants have not, however, submitted any evidence or affidavits to suggest that this actually was the Legislature's intent, or to refute Plaintiffs assertions that their job status was changed to facilitate their dismissal.

Viewing the facts in the light most favorable to the Plaintiffs, it is clear that there is a genuine dispute over the Legislature's motivation for reclassifying Plaintiffs' positions and refusing to grandfather their tenured status. This dispute is obviously material, because the nature of the legislative purpose will determine whether there is a substantive due process claim. Since there is a genuine dispute of material fact, both Plaintiffs' and Defendants' Motions for Summary Judgment on the substantive due process count must be DENIED.

### F. EQUAL PROTECTION

Plaintiffs claim that the Legislature violated the Equal Protection Clause because, without a legitimate reason, it treated them differently than other similarly situated state employees by reclassifying their

---

**9.** As indicated above, other circumstances that might indicate an improper purpose include the fact that the measure was added without hearing or debate to an unrelated budget bill late in the evening of the final days of the 1994 session, that Plaintiffs were never officially provided notice of the change, and that key decision makers (including the AOT head) were out of state when the decision was made.

positions and refusing to grandfather them.[10] Defendants maintain that modifying the management structure of a state agency to conform with other state agencies is a reasonable and legitimate exercise of legislative discretion.

 Where, as here, a classification involves neither fundamental rights nor a suspect class, the classification survives equal protection review provided that it is rationally related to a legitimate state interest. *New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976). In the present case, the Legislature treated Plaintiffs differently than other similarly situated persons by refusing to grandfather them as it had done in the past for other public employees whose positions had been transferred from classified to exempt status. As we indicated in Part II–E, *supra*, Plaintiffs have brought forth sufficient evidence to create a factual dispute over whether the legislature treated them differently for the improper purpose of removing them from the classified service so that they could be terminated without either cause or due process. The legitimacy of the legislative purpose is clearly material because it is determinative of Plaintiffs' ability to pursue an equal protection claim. Because there is a genuine issue of material fact in dispute, both Plaintiffs' and Defendants' Motions for Summary Judgment on the Equal Protection count are hereby DENIED.

### CONCLUSION

Based on the foregoing analysis, the Court hereby:

1. GRANTS Defendants' Motion for Summary Judgment on the Contract Clause claim in Count I of the Complaint;

2. GRANTS Defendants' Motion for Summary Judgment on the Takings Clause claim in Count II of the Complaint;

3. DENIES both Plaintiffs' and Defendants' Motions for Summary Judgment on the Procedural Due Process claim in Count III of the Complaint;

4. DENIES both Plaintiffs' and Defendants' Motions for Summary Judgment on the Substantive Due Process claim in Count IV of the Complaint;

5. DENIES both Plaintiffs' and Defendants' Motions for Summary Judgment on the Equal Protection Clause claim in Count V of the Complaint; and

6. GRANTS Defendant's Motion for Summary Judgment on the Breach of Contract claim in Count VI of the Complaint.

SO ORDERED.

---

**10.** Plaintiffs have also made a claim under the equal protection guarantee of Ch. I, Art. 1 of the Vermont Constitution. Because the Federal and Vermont Constitutions use the same test for equal protection review, *Lorrain v. Ryan*, 160 Vt. 202, 212, 628 A.2d 543 (1993), our equal protection analysis applies to Plaintiffs' claims under both the Fourteenth Amendment and Article I.