STATE OF VERMONT

ENVIRONMENTAL COURT

Village of Woodstock,
Plaintiff,                          }
                                    }
v                                   }   Docket No. 162-8-00 Vtec
                                    }
Joyce Shaw, d/b/a Shiretown         }
Books, Defendant.

Decision and Order on Village's Motions for Summary Judgment

In this zoning enforcement action, the Village of Woodstock is represented by Harry A. Black, Esq.; the Defendant, Joyce Shaw, d/b/a Shiretown Books, represents herself, with her husband Potter Shaw, submitting written documents on her behalf. The Village has moved for summary judgment on the issue of liability.

The following facts are undisputed unless otherwise noted.

Defendant operates Shiretown Books, a bookstore located at 9 Central Street in the Central Commercial zoning district of the Village of Woodstock. The business displays one sign reading " Shiretown Books" on the outside wall above the entrance (" the facade sign" ). It displays one sign projecting from the front entrance, hanging from a bracket above the front entrance, reading " Shiretown Books" on both sides (" the projecting sign" ). In addition, the edges of the awnings over each of the business' two front windows display lettering, with the right-hand one[1] reading " Shiretown Books."

Under § 517(B)(1)(a) of the Zoning Regulations, a ground floor business such as Defendant's is limited to two signs. The Village issued a Notice of Violation on December 15, 1999, for the violation of displaying three signs (the facade sign, the projecting sign, and the awning flap sign) in violation of the two-sign limit in § 517. The Notice of Violation apparently[2] required Defendant to remove one of the signs to come into compliance. Defendant appealed the notice of violation to the ZBA, which upheld the notice of violation on March 3, 2000. Defendant did not appeal the ZBA's decision upholding the notice of violation to this Court.

Defendant argued to the ZBA that the awning flap is not a " sign" under the ordinance; that many other local businesses on the same street as Defendant's business have more than two signs and have awning flap signs; and that all businesses should have equal signage, that is, no signs should have grandfathered status. In its decision upholding the Notice of Violation, the ZBA determined that the awning flap is a sign, and that signs at other businesses in excess of the § 517 limit are pre-existing nonconforming uses. Although Defendant did not appeal the decision of the ZBA to this Court, she continued to correspond with the zoning administrator. She changed the hours the awning sign was on display, to argue that the awning sign should qualify as a temporary sign under the ordinance. She continued to claim that the Village was engaging in

selective enforcement against her. Her last letter to the zoning administrator is dated July 13, 2000; she claims another letter from the Zoning Administrator (not provided) was dated July 17, 2000. The complaint in the present case was served on her on July 22, 2000, and filed with the Court on July 27, 2000.

Over the course of the correspondence between the parties, Defendant's appeal of the notice of violation to the ZBA, and the briefing of the motion for summary judgment in this Court, Defendant has raised the following arguments: 1) that the awning flap is not a "sign" as defined in the Zoning Regulations; 2) that, if it is a sign, it is a "temporary" sign exempt from regulation under the Zoning Regulations; 3) that other businesses display signs in excess of the limit in § 517 without being subject to enforcement; 4) that recent Village history demonstrates that businesses limited to two signs experience a failure rate significantly in excess of that experienced by competitors with more signs; and 5) that she has not had an adequate opportunity to appeal.

The Village argues that Defendant's lack of appeal from the decision of the ZBA precludes these collateral attacks on the notice of violation, under 24 V.S.A. § 4472(d). The Village is correct. In re Appeal of Newton Enterprises, 167 Vt. 459 (1998); Town of Charlotte v. Richmond, 158 Vt. 354 (1992); Town of Sandgate v. Colehamer, 156 Vt. 77 (1990). Since Defendant did not appeal the Notice of Violation to this Court, she cannot now contest the ZBA's decision on the Notice of Violation. That is, she cannot now claim that the awning sign is not a violation of the Zoning Regulations. However, because the Court will consider the circumstances of the violation in determining the appropriate remedy in this matter, we will briefly address Defendant's arguments, so that she may be prepared for the remaining hearing on the relief requested in the Village's complaint.

The lettering "Shiretown Books" on Defendant's awning flap falls within the definition of "business sign" and also arguably of "banner sign" in § 109 of the Zoning Regulations. It is a sign subject to regulation under § 517.

The awning flap sign is not exempt as a temporary sign, even if it is only displayed during nine of the twenty-four hours in any day. A temporary sign is defined in the Zoning Regulations as one which "announc[es] current events, such as retail store sales, garage sales, auctions, church fairs, rummage sales, produce sales, blood bank collections, and polling places." § 517(A)(11)(a). In any event, a temporary sign is limited in duration to seven days. The competitor's book cart placed on the sidewalk is probably regulated under § 516 as an outdoor display, but it is not before this Court in this case.

Defendant also argues that she has been singled out for enforcement, in that other nearby businesses have more than two signs and have awning signs. By state statute, carried out by § 607 of the Zoning Regulations, a pre-existing nonconforming use may continue even after a municipality adopts zoning regulations or amendments to the contrary. The parties have not established when the two-sign limitation was added[3] to the Zoning Regulations, nor when the other business establishments first displayed their excess signs or awning signs. A business with a certain number of signs prior to adoption of the two-sign limitation may continue to display the extra signs, and may even expand the nonconformity if approved by the ZBA under § 607(A)(1),

until or unless it is discontinued as provided in § 607(A)(2) or (B)(2). See, e.g., Hinsdale v. Village of Essex Junction, 153 Vt. 618, 626 (1990). (" Nonconforming uses are inconsistent with the purpose of zoning and are tolerated only because they are antecedent to the applicable zoning provisions. A goal of zoning must be to phase out such uses." ) Until grandfathered signs are phased out, enforcement may appear uneven because newer businesses will be permitted only the smaller number of signs, while older businesses may continue to use their grandfathered signs. Defendant disagrees with this policy, and argues that the Village' s sign regulations have caused a devastating failure rate for new businesses for this reason. However, even if she had properly appealed from the ZBA' s decision on the notice of violation, it is not for the courts to alter the Village' s zoning policy, or to alter the state statute' s policy on nonconforming uses.

Beyond the policy behind grandfathering, and even if Defendant can show that other businesses are also in violation, a litigant wishing to show selective enforcement must show more than the bare fact that the municipality has failed to enforce the zoning ordinance in similar circumstances. Rather, the litigant must meet both parts of a two-part test. The litigant must show not only that the person, compared with others similarly situated, was selectively treated; but also that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person. In re Appeals of Letourneau, 168 Vt. 539, 549 (1998) (citations omitted).

Defendant' s final argument is that no reasonable appeals process was available to her from the Zoning Administrator' s last letter, as the present action was filed shortly thereafter. It is difficult for the Court to understand in what way the statutory appeals process is insufficient, especially as Defendant availed herself of at least part of the process to appeal the notice of violation to the ZBA. Any act or decision of the Zoning Administrator may be appealed within 15 days in that manner. 24 V.S.A. § 4464(a). Any interested party who then is not satisfied by the decision of the ZBA may appeal to the Environmental Court. 24 V.S.A. § 4471(a). If an enforcement action is already pending or is filed after such an appeal comes to the Environmental Court, the two matters are consolidated for a single hearing. Defendant does not appear to have filed any appeals with this Court, nor to have appealed any act of the Zoning Administrator to the ZBA, other than her appeal of the Notice of Violation discussed above.

Accordingly, based on the foregoing, the Village' s Motion for Summary Judgment is GRANTED. Defendant is in violation of § 517 of the Zoning Regulations by displaying more than two signs, that is, by displaying the awning sign as well as the facade sign and the projecting sign. A one-hour hearing on the relief requested in this matter by the Village will be scheduled in Woodstock at the Windsor Superior Court; the parties are requested to notify the Environmental Court in writing on or before June 1, 2001, as to any dates they are unavailable for such a hearing during the months of June, July and August, and whether they anticipate that all the necessary evidence can be presented in the hour allotted to this hearing.

Done at Barre, Vermont, this 16th day of May, 2001.

_____
Merideth Wright
Environmental Judge

## Footnotes

1.    The left-hand one reads "Vermont Animal Cookies" and is not discussed by the parties; it may date from a prior business at that location and will not be further discussed.

2.    Neither party provided a copy of the Notice of Violation.

3.    Defendant assumes that the relevant date is 1977, when the original zoning regulations were adopted; however, the relevant date for determining whether a nonconforming use is pre-existing is the date on which the regulation was adopted that rendered the use nonconforming.