## In re Application of Bruce White

[587 A.2d 928]

No. 89-215

Present: Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.

Opinion Filed November 21, 1990

Motion for Reargument Denied January 18, 1991

614

*John D. Hansen,* Rutland, for Plaintiff-Appellant.

*W. John McNally, III* and *Frank H. Olmstead* of *Teachout, Brooks, Moore & McNally,* Norwich, for Defendant-Appellee.

**Morse, J.** Appellant Bruce White applied for a zoning permit to construct a farm stand and greenhouse and to grow produce on a 2.45-acre lot he owned in Randolph, Vermont, where one residence existed and another was planned to be built. The Randolph Board of Adjustment denied the permit, as did the superior court on appeal. We affirm.

The material facts are substantially undisputed. In late June 1988, Mr. White applied to the Randolph zoning administrator for a zoning permit. He had purchased a 2.45-acre lot with the intention of connecting a retail farm stand to the existing house. The Randolph Zoning Regulations (RZR) place Mr. White's lot in two different zoning districts: the front 200 feet in the Apartment Residence District (AR); the rest of the property in the Residence District (RES).

Upon reviewing Mr. White's zoning permit application, the zoning administrator determined that it required conditional

use approval by the board. In late July 1988, the board held a conditional use review hearing and denied approval. The board notified Mr. White orally of its decision, but it never put the decision in writing.

In early August 1988, Mr. White appealed the board's decision to superior court. While the appeal was pending, but before trial de novo, he applied for and received a zoning permit to construct an additional single-family house on the property at issue here. After trial, the court denied conditional use approval to Mr. White.

## I. Jurisdiction

### A.

As a threshold issue, appellant challenges the superior court's jurisdiction to rule on the merits of his appeal. Relying on *Nash v. Warren Zoning Board of Adjustment*, 153 Vt. 108, 113, 569 A.2d 447, 451 (1989), and *In re Knapp*, 152 Vt. 59, 65, 564 A.2d 1064, 1067 (1989), Mr. White contends that the board's oral denial of his permit request was not a "final decision." He argues that the board was required to issue a written decision including findings of fact, that its failure to do so meant that there was no final appealable order, and that his appeal, which was taken from the board's vote, was insufficient to confer jurisdiction on the superior court. Finally, he asserts that because the board did not issue a final written decision, his permit was deemed approved by operation of law. 24 V.S.A. § 4470(a).

We addressed these issues in *Hinsdale v. Village of Essex Junction*, 153 Vt. 618, 572 A.2d 925 (1990). In that case, we held that a "landowner with actual notice of a decision . . . can file a notice of appeal, relying on the oral decision even though entry of judgment comes later." *Id.* at 625, 572 A.2d at 929. Essentially, by acting on the board's oral decision, Mr. White filed a premature notice of appeal, which will be treated as if it had been filed on the day of entry of judgment. V.R.A.P. 4; *State v. Kennison*, 135 Vt. 238, 239–40, 373 A.2d 556, 557 (1977).

■■ Although a zoning applicant can appeal from an oral decision, that decision does not become final and the appeal period does not begin to run until either the board files its written decision or the period for doing so—sixty days, 24 V.S.A. § 4407(2)—has expired. *Nash*, 153 Vt. at 111, 569 A.2d at 449–50.

In short, there will always be a final appealable decision on the sixty-first day after a conditional use hearing: either a noticed oral decision will become final, see *Hinsdale*, 153 Vt. at 625, 572 A.2d at 929, or the board's failure to make a decision will become a deemed approval, 24 V.S.A. § 4407(2). In the first case, a premature appeal like Mr. White's will become effective on the sixty-first day. In the second case, the deemed approval will constitute a final decision that can be appealed within thirty days by any interested party. 24 V.S.A. §§ 4472(a), 4471; V.R.C.P. 75(c).

In hindsight, if we were to follow Mr. White's logic, a premature appeal would frustrate the appellate process and force a deemed approval by preventing a final decision from ever being rendered. We cannot interpret 24 V.S.A. § 4407(2) to require such an irrational result. *In re R.S. Audley, Inc.*, 151 Vt. 513, 517, 562 A.2d 1046, 1049 (1989). We have previously held that the deemed approval remedy in 24 V.S.A. § 4470(a) is intended to curtail indecision and protracted deliberations in the zoning decisionmaking process. *Hinsdale*, 153 Vt. at 623–24, 572 A.2d at 928. However, we are not persuaded that the legislature intended that the zoning appeals scheme should be defeated merely because no written decision is produced.

To the contrary, the deemed approval remedy manifests a preference for timely decisions over written ones. This preference makes sense because the appeal is de novo and therefore proceeds as if the board never made a decision. *Chioffi v. Winooski Zoning Board*, 151 Vt. 9, 11, 556 A.2d 103, 105 (1989). The board's findings—no matter how thorough—are not under review and are not dispositive. The superior court starts all over and does its own factfinding. The statutory scheme assures finality of a board decision in a fairly brief, finite time period.

■■ Finally, once a board decision is "rendered"—i.e., the board has made a decision and communicated it to the applicant, as was done here—the applicant is not entitled to the deemed-approval remedy, *Hinsdale*, 153 Vt. at 624–25, 572 A.2d at 928–29, so even if Mr. White's reasoning were accepted, the result he seeks would not follow in this case.

## B.

Mr. White raises an additional challenge to the superior court's jurisdiction.

When the zoning administrator received Mr. White's permit application, he reviewed it and determined that it involved a request for conditional use approval, and therefore passed it on to the zoning board for action. See RZR § 3.4:1 ("No zoning permit may be issued by the Administrative Officer unless conditional use approval has been granted by the Board of Adjustment."). Mr. White asserts that by taking this action the zoning administrator determined that the use he planned for his property was a conditional use, that no one appealed this "determination," and therefore at the end of the thirty-day appeal period the use was determined to be a conditional one. 24 V.S.A. § 4472(d). He then reasons that because no one appealed the zoning administrator's determination, the superior court lacked jurisdiction to rule on whether his proposal was a conditional use.

■ We disagree. The simple answer to appellant's semantic alchemy is that the zoning administrator made no determination on the merits. All he decided was that Mr. White's application was a request for a conditional use permit, not that the use Mr. White was proposing met all the conditions for a conditional use permit, a decision the zoning administrator in any case would have no authority to make. RZR § 3.4:1.

## II. Merits

In addition to jurisdictional challenges, Mr. White raises two challenges on the merits: (1) that RZR § 3.4:1 is illegal and unenforceable, and (2) that the trial court made numerous errors in its conclusions of law.

## A.

The trial court denied Mr. White a zoning permit on the ground that his proposal was not in conformity with RZR § 3.4:1, Randolph's conditional use regulation. Mr. White does not challenge the court's ultimate findings but instead argues that the criteria contained in RZR § 3.4:1 are invalid and unenforceable because they fail to conform to the general standards prescribed in the enabling act, 24 V.S.A. § 4407(2).

■ This Court reviews zoning ordinances narrowly, overturning only those that are clearly unreasonable, irrational, arbitrary, or discriminatory. *Smith v. Town of St. Johnsbury*, 150

Vt. 351, 361, 554 A.2d 233, 240 (1988). RZR § 3.4:1 does not duplicate the enabling act; and we cannot agree with the trial court's conclusion that the regulation can reasonably be interpreted to encompass all the required general criteria. The enabling act requires municipalities to adopt general standards such that a "proposed conditional use shall not adversely affect: (A) The capacity of existing or planned community facilities; (B) The character of the area affected; (C) Traffic on roads and highways in the vicinity; (D) Bylaws then in effect; or (E) Utilization of renewable energy resources." 24 V.S.A. § 4407(2). The Randolph ordinance, fairly interpreted, incorporates only some of the concerns: traffic flow and traffic safety are dealt with extensively—see RZR § 3.4:1(b)(2), (b)(3), (c), (d), (g)—but statutory standards (A), (B), and (D) are incorporated less directly and less exhaustively, and utilization of renewable energy resources is missing entirely.

However, we do not believe that the consequences appellant advocates—remand to the court to issue him a conditional use permit—would follow if we found the regulations unenforceable. RZR § 6.10.3 defines agriculture as a conditional use. If we strike the town's conditional use provisions, either Mr. White would have no mechanism to get approval for his proposal or his permit request would have to be evaluated under the general criteria of § 4407(2).

█ Mr. White does not contend those criteria were not followed. The trial court denied the permit because Mr. White's proposal would have adverse effects on traffic and the surrounding community, two factors explicitly provided for in § 4407(2). Adverse findings on these criteria alone were sufficient to support a denial of the permit.

█ Moreover, the town has zoning authority only in accordance with, and subject to, the terms and conditions imposed by the state when granting the power to zone. *Flanders Lumber & Building Supply Co. v. Town of Milton*, 128 Vt. 38, 45, 258 A.2d 804, 808 (1969). Thus, once a municipality adopts conditional-use zoning, its decisions must conform to the statutory general standards. The statutory criteria are what the legislature deemed important. The town may enact ordinances that replicate or embody those criteria, but if they do not, the statutory criteria still govern without further action by the town. See

*Union Twist Drill Co. v. Harvey*, 113 Vt. 493, 503, 37 A.2d 389, 395 (1944)(formulation of required regulations by the tax department is not a condition precedent to the collection of taxes as long as the tax formula enacted by the legislature is followed). Alternatively, the statutory criteria will be deemed to be contained in the ordinance if for some reason they are omitted. Cf. *Muir v. Hartford Accident & Indemnity Co.*, 147 Vt. 590, 593–94, 522 A.2d 236, 238–39 (1987)(voiding clause in an insurance policy that reduced the uninsured motorist coverage required by 23 V.S.A. § 941 and in essence rewriting the contract to contain the statutory requirement).

■ Statutes are the state's legislative policies; municipalities are its instrumentalities. *Kedroff v. Town of Springfield*, 127 Vt. 624, 627, 256 A.2d 457, 461 (1969). If the municipality's ordinance fails to effectuate a state policy, the policy does not cease to exist. Instead, the municipality's ordinance should be read to include and effectuate state policy. See *id.* (water pollution control statutes may be regarded as amending or repealing parts of a local ordinance conflicting with those statutes); see also 1982, No. 132, § 19 (when making a comprehensive revision to planning and development statutes, legislature mandated that the revision should not invalidate any town plan or bylaw but instead that plans and bylaws violating the revised act should simply be "applied consistently with [it]").

The need to read the general criteria into the town's zoning ordinance is supported both by the express terms of the statute and by the way in which the various terms interact to effectuate the legislative purpose. The conditional use statute, 24 V.S.A. § 4407(2), provides that a town may permit certain uses "if general and specific standards . . . are prescribed in the zoning regulations." The general standards "shall require that the proposed conditional use shall not adversely affect" enumerated factors A through E quoted above. The specific standards "may include requirements" with respect to seven enumerated factors (e.g., minimum lot size, minimum off-street parking, landscaping and fencing) and a final catchall, "such other factors as the zoning regulations may include."

■ ■ The plain meaning of the statute is that, in order to do conditional use zoning, the town must use the enumerated general standards: they are the floor below which no town can

go if it wants to do conditional use zoning. The legislature has found these general standards to be so essential that, if a town engages in conditional use zoning, its use of these standards is the fulfillment of a purely administrative duty for which an ordinance is unnecessary. 5 E. McQuillin, Municipal Corporations § 15.03, at 63 (3d ed. 1989). On the other hand, specific standards are left to the town's discretion. Specific standards are the town's individualized zoning ceiling, giving the town's inhabitants notice of the limits of their town's particular zoning scheme. In this case, all the general standards mandated by the statute are read into the ordinance; the remainder of the ordinance, including provisions extrapolated from general criteria (such as the numerous provisions about traffic) are valid as specific standards within 24 V.S.A. § 4407(2)(H).

## B.

Finally, Mr. White contests the trial court's conclusions (1) that the proposed farm stand was a commercial use, which was completely prohibited in AR and RES districts, and (2) that agriculture was a principal use, which the lot was not adequate to support. The court used these conclusions as alternative bases on which to deny Mr. White a permit.

Mr. White contends that the proposed farm stand was an accessory use, which is defined in RZR § 1.3.3. as "[a] use customarily incidental and subordinate to the principal use and located on the same lot. When applied to agriculture this shall be deemed to include the sale of products raised on the property." However, the court concluded that the proposed farm stand would really be a retail grocery with about 40% of the products coming from outside suppliers. The court's conclusion is not clearly erroneous, arbitrary, or capricious. *In re McDonald's Corp.*, 151 Vt. 346, 349, 560 A.2d 362, 364 (1989).

Next, the court found that, although both portions of Mr. White's property were in districts allowing agriculture as a conditional use, Mr. White's proposal for the intensive cultivation of fruits and vegetables and the construction of a greenhouse envisioned agriculture as a principal use. RZR § 1.3.36 defines a principal use as one which is "dominant on a lot such use or uses being fundamental and superior to any other use of the land or lot." Mr. White again argues that his plan is for an accessory use, a use "incidental and subordinate to the primary use."

However, the court found, and Mr. White does not contest, that his proposal "will involve farming on almost every area of the lot where a structure or a driveway does not presently exist or is planned to exist." The court's conclusion that agriculture was a dominant rather than an incidental use of the lot, and therefore a principal use, was not clearly erroneous. *McDonald's Corp.*, 151 Vt. at 349, 560 A.2d at 364.

Finally, the court concluded that Mr. White's lot, which at the time of the trial de novo had two principal buildings and hence two principal uses, could not sustain agriculture as a third principal use. Under RZR § 5.10:11: "No more than one principal use shall be permitted on a lot unless the area of such lot is of sufficient amount to meet the total minimum area requirements for each use if they were in separate and individual lots." See RZR §§ 6.2.3, 6.3.3 (minimum lot requirements for AR and RES districts). The court specifically found that Mr. White's lot, "although large enough to meet minimum lot size requirements for the construction of two residences, would violate minimum lot size requirements if yet another principal use were placed on the lot." The court did not indicate how it made the calculation resulting in this finding. However, the appellant did not challenge the finding, and the finding is sufficient to support the conclusion that Mr. White's lot cannot sustain a third principal use.

*Affirmed.*