# Stuart Richards v. Paul Z. Nowicki and Town of Norwich

[772 A.2d 510]

No. 99-406

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed March 23, 2001

*C. Daniel Hershenson* and *Anthony Z. Roisman* of *Hershenson, Carter, Scott & McGee*, Norwich, for Plaintiff-Appellant.

*Laura O'Connor, Sharetha S. Marsicovetere* and *John C. Candon* of *Miller & Candon, LLC,* for Defendant-Appellee Nowicki.

*Gary R. Wieland,* White River Junction, for Defendant-Appellee Town of Norwich.

**Dooley, J.** Plaintiff Stuart Richards appeals from the Windsor Superior Court's order granting the summary judgment motion of defendants, Town of Norwich (Town) and Paul Nowicki (defendant), dismissing plaintiff's challenge to a sewage disposal permit issued by the Town to defendant. On appeal, plaintiff argues that (1) the Town's 1994 amendments to its septic ordinance are invalid, and, as a result, defendant had to comply with state minimum technical standards for a sewage disposal system; (2) plaintiff has a vested right to consideration of defendant's sewage disposal system under the 1994 amendments to the Town's septic ordinance; (3) if the 1994 amendments do not apply, the decision to award defendant a permit is inconsistent with the provisions of section IV of the 1973 ordinance; (4) the Town selectboard ruled erroneously, and denied plaintiff due process of law, when it granted defendant a permit under the standards of the 1973 ordinance, even though the hearing was conducted under the standards of the 1994 amendments; and (5) section VII of the 1973 septic ordinance is unconstitutional because it is vague and grants discretion to the selectboard to issue a sewage disposal system without adequate standards to govern the exercise of its discretion. We disagree and affirm the decision of the Windsor Superior Court.

Plaintiff and defendant are adjoining landowners. Plaintiff has a principal residence on his lot. In 1996, defendant proposed to build a residential dwelling on his lot. Because of the size and topography of defendant's lot, as well as the presence of a stream and water line across it, defendant could not comply with the provisions of the Town septic ordinance. Accordingly, he applied for a special case exception under a specific authorization contained in the ordinance. Both the Town board of health, and on appeal the board of selectmen, authorized issuance of a sewage disposal permit, the latter on March 11, 1997. Plaintiff then appealed to the Windsor Superior Court, which initially ruled that plaintiff lacked standing to seek court review of the sewage disposal permit decision.

Appeal of the standing decision led to our first opinion in this dispute. In *Richards v. Town of Norwich,* 169 Vt. 44, 726 A.2d 81 (1999) (*Richards I* ), this Court held that Richards had the right under V.R.C.P. 75 to appeal the selectboard's approval of defendant's septic

system and that the complaint sufficiently established Richards' standing to challenge that decision. For purpose of this decision, the most important part of the earlier opinion is its description of the scope of review. Because this is a review proceeding under V.R.C.P. 75, in the nature of certiorari, review is limited to "legal issues raised by the selectboard's issuance of a permit." *Richards I*, 169 Vt. at 48, 726 A.2d at 84.

On remand from this Court, both parties renewed their motions for summary judgment. The court granted defendant's motion, holding that the sewage disposal permit application was properly reviewed under the special cases provision of the septic ordinance, and that the Town correctly applied the provision. In reaching this decision, the court held that the 1973 Town septic ordinance applied to defendant's permit application and that the septic system did not have to comply with state standards.

Each of the first two issues raised by plaintiff relate to the underlying question of which version of the Town septic ordinance, if any, applies to defendant's application. We start with an examination of that question. In 1973 the Town adopted an ordinance that established minimum standards regulating the design, construction, and installation of any new septic systems to be located on any town lot. The minimum standards were intended to ensure that waste discharged from these systems did not contaminate water, create a health hazard, or constitute a nuisance. The 1973 ordinance also included a special cases provision, section VII, which provides:

SECTION VII. SPECIAL CASES

1. If, due to unusual physical circumstances of the building to be served, or the site where the work is to be located, the applicant believes that a permit granted to him would be consistent with the protection of the public health and safety without full compliance with the requirements of these regulations, he shall give a full statement of all pertinent information in his application. The Administrator shall thereupon forward such application to the local Board of Health with his recommendations.

The Town amended the 1973 ordinance in 1994, to establish new detailed specifications for permitted systems. The amendments did not change the procedural provisions of the ordinance and did not eliminate or change the wording of the special cases provision in section VII. By the time of the 1994 amendments, the Legislature had

required the Vermont Secretary of Natural Resources to adopt "minimum standards for municipal ordinances regulating sewage systems." 24 V.S.A. § 3632(a) (effective July 1, 1984). Any ordinances adopted after the effective date of this requirement had to be submitted to the Secretary and could not "take effect until . . . approved by the department of environmental conservation as being at least as stringent as the minimum standards under section 3632." *Id.* § 3633(b). Apparently the Town believed that if it amended the existing ordinance, rather than adopting a new one, and limited the amendments to the detailed specifications, it could avoid review under § 3633(b). It never submitted the ordinance amendments to the Department of Environmental Conservation after they were adopted.

Plaintiff and the Town now agree that the Town was required to obtain the approval of the department to put into effect the provisions of the 1994 amendments. As detailed below, there is disagreement on the effect of this lack of approval on this proceeding. The Town determined that the failure of the 1994 amendments to take effect left in place the provisions of the 1973 ordinance, which remain in effect under 24 V.S.A. § 3633(d). That provision states that municipal sewage ordinances approved under 18 V.S.A. § 613 prior to July, 1984 "shall remain in effect and shall be deemed to have been adopted and approved under this section."[1] There is no dispute that the 1973 Town septic ordinance was approved prior to 1984 pursuant to 18 V.S.A. § 613.

If the Town had reached its current position before the board of selectman granted the permit to defendant, some of plaintiff's issues on appeal would have been avoided. However, defendant applied for a permit under the understanding that the 1994 amendments were in effect, and the selectboard approved the permit under the same understanding. On June 6, 1997, while this case was on appeal to the superior court, the selectboard adopted a resolution stating that it "recently became aware that the May 1994 amendment to the Norwich Septic Ordinance was required to be approved by the Department of

---

[1] Under recent amendments, if the approval was given by the Vermont Board of Health, the sewage ordinance can remain in effect indefinitely. Alternatively, if the approval was given by the Commissioner of Health there is a cutoff date beyond which ordinances which do not comply with state minimum standards become ineffective. See 1993, No. 180 (Adj. Sess.), § 3 (cutoff date of July 1, 1997); 1997, No. 51, § 4 (cutoff date of July 1, 1998); 1997, No. 161 (Adj. Sess.), § 19a (cutoff date of July 1, 2000); 1999, No. 161 (Adj. Sess.), § 6 (cutoff date of July 1, 2002). It is not clear from the record which body approved the 1973 ordinance.

Environmental Conservation" and that legal counsel had advised that the 1994 amendments had "not taken effect" and the 1973 ordinance was validated by 24 V.S.A. § 3633(d) and was not repealed by the ineffective amendment. The selectboard resolved that the 1973 septic ordinance "remains in full force and effect" and noted that "this action will not invalidate or affect any permits issued since May 1994."

In his complaint in this case, filed before the Town issued its resolution, plaintiff attacked the Town's action in part because the Town had failed to obtain approval for the 1994 amendments under § 3633(b). Thus, the Town's resolution simply conceded a point which plaintiff was raising on appeal.

We also note at the outset that the superior court resolved this case on summary judgment. This Court reviews a motion for summary judgment under the same standard as the trial court. *O'Donnell v. Bank of Vermont*, 166 Vt. 221, 224, 692 A.2d 1212, 1214 (1997). Summary judgment is appropriate when the record clearly indicates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Politi v. Tyler*, 170 Vt. 428, 431, 751 A.2d 788, 790 (2000).

We begin with the consequences of the failure of the Town to seek Department of Environmental Conservation approval for the 1994 amendment to the septic ordinance. Both parties agree that the Town was required to obtain such approval. The Town took the position that the failure to obtain approval meant that the 1994 amendments never went into effect, leaving in place the 1973 ordinance. Arguing primarily from *In re White*, 155 Vt. 612, 587 A.2d 928 (1990), and *Kedroff v. Town of Springfield*, 127 Vt. 624, 256 A.2d 457 (1969),[2] plaintiff urges instead that the failure to comply with § 3633(b) means that the state minimum standards are incorporated into the Norwich septic ordinance and defendant does not comply with those minimum standards. In *White*, the Town of Randolph failed to comply with a legislative mandate that its zoning criteria for granting a conditional use permit contain certain statutory general standards. We held, however, that the failure to include these standards in the town zoning ordinance did not make the ordinance invalid or require that a landowner be given a conditional use permit without complying with

---

[2] Although *Kedroff* has language that supports plaintiff's position, we read the case as holding that local requirements that are inconsistent with controlling state requirements are invalidated by the state requirements. *White* is more supportive of plaintiff's incorporation argument.

the statutory standards. Instead, we held that the consequence was that the statutory standards became a part of the town zoning ordinance, whether or not the town adopted them. *White*, 155 Vt. at 618, 587 A.2d at 931.

■ Two factors distinguish this case from *White*. In *White*, the statute involved, 24 V.S.A. § 4407(2), did not specify the consequences of failing to follow its mandate. In this case, the Legislature has specified that consequence, that the ordinance provision *"shall not take effect* until it is approved by the department of environmental conservation." 24 V.S.A. § 3633(b) (emphasis added). If the meaning of a statute is plain, we must generally follow that plain meaning. *Brennan v. Town of Colchester*, 169 Vt. 175, 178, 730 A.2d 601, 604 (1999) (unambiguous statute must be construed according to its terms and express meaning). Here, it is plain.

■ The other factor is the remedy sought in relation to the evident legislative intent. In *White*, the Legislature clearly intended that every municipality use the state standards in deciding whether to issue conditional use permits. Therefore, our remedy was to construe each municipal zoning ordinance "to include and effectuate state policy." *White*, 155 Vt. at 619, 587 A.2d at 932. In this case, the Legislature has explicitly grandfathered older, noncomplying standards, 24 V.S.A. § 3633(d), indicating no preference between the older and newer standards. If the result of noncompliance with § 3633(b) is that grandfathered standards are left in place, that result is fully consistent with legislative intent.

■ We agree with the Town and the trial court that the result of not giving effect to the 1994 amendment is to leave the 1973 ordinance in force, unamended. We have recognized that consequence when ordinance amendments are declared invalid. See *In re Cottrell*, 158 Vt. 500, 508, 614 A.2d 381, 385 (1992) (because zoning ordinance amendment, which allowed veterinary clinics in zoning district, was invalid, zoning permit for clinic must be denied under preexisting ordinance provisions); *Kalakowski v. Town of Clarendon*, 139 Vt. 519, 525, 431 A.2d 478, 481 (1981) (zoning ordinance amendment changing zone from commercial and residential to commercial and industrial was invalid; as a result permitted uses in the district reverted to those before the amendment). At least in the absence of a provision in the amendment repealing the earlier version of the ordinance, this has been the general law around the country. See, e.g., *City of New Orleans v. Levy*, 64 So. 2d 798, 802 (La. 1953) (collecting cases);

*McClellan v. Kansas City,* 379 S.W.2d 500, 506 (Mo. 1964); *Concordia Collegiate Institute v. Miller,* 93 N.E.2d 632, 636-37 (N.Y. 1950); cf. *Athey v. City of Peru,* 317 N.E.2d 294, 297 (Ill. App. Ct. 1974) ("an amendatory ordinance does not purport to repeal an ordinance as it previously existed but merely changes or alters the original ordinance, or some of its provisions; and such portions of the old ordinance as are repeated or retained either literally or substantially are regarded as a continuation to the old ordinance, and not the enactment of a new ordinance nor the repeal of the former ordinance").

For these reasons, we reject plaintiff's argument that the Norwich septic ordinance must be read to embody the state minimum standards as a result of the Town's failed attempt to amend that ordinance. The 1973 ordinance governed the sewage disposal permit proceeding before the Town.

Plaintiff argues alternatively that he has a vested right to have defendant's permit considered under the 1994 ordinance provision, analogizing his status to the developer in *Smith v. Winhall Planning Commission,* 140 Vt. 178, 436 A.2d 760 (1981). We fail to follow the analogy. In *Smith,* we held that a developer had a vested right that a subdivision permit request be evaluated under the zoning ordinance in effect at the time of the application, and not under later amendments, as long as the request was validly brought and pursued in good faith. *Id.* at 181-82, 436 A.2d at 761-62. Here, plaintiff is not the developer, and he attacked the 1994 amendment for noncompliance with § 3633(b), obtaining the concession that he sought. Irrespective of which version of the ordinance applied, the selectboard proceeded under section VII, which was not changed by the amendment.

Even if we could follow the analogy, we do not see how it gets plaintiff the remedy he seeks. Apparently, he desires a holding that he can have the advantage of the 1994 amendments so that they can be found invalid *and replaced by the minimum state standards.* As we held above, the Legislature has determined that substitution of the state standards is not the proper remedy. Plaintiff cannot get around that legislative determination by his vested rights theory.

Next, plaintiff argues that if the 1973 ordinance applies, the superior court misconstrued it, specifically the third paragraph of section IV. That paragraph states in part that, "[i]n case of a conflict between their requirements and any other regulation, ordinance or statute applicable in Norwich, the more stringent shall apply." Plaintiff argues that this language required the selectmen to use the more stringent state minimum standards, rather than those contained in the

ordinance itself. We might agree with this analysis if there were a conflict between the ordinance standards and applicable state standards. By virtue of 24 V.S.A. § 3633(d), however, there are no applicable state standards different from those stated in the ordinance because the grandfather clause explicitly makes the pre-existing ordinance the applicable standard.

Plaintiff also uses the concept of conflicting standards to allege that section VII(1) of the 1973 ordinance, the special cases provision, conflicts with and is less stringent than the regular standards in the ordinance, and under section IV must give way. If we accepted plaintiff's argument, section VII could never be used in any case. We must read the sections of the regulatory scheme in context and the entire scheme in pari materia. *Galkin v. Town of Chester*, 168 Vt. 82, 87, 716 A.2d 25, 29 (1998). We do not construe statutes or regulations in a way that renders significant parts surplusage. *Trombley v. Bellows Falls Union High School District No. 27*, 160 Vt. 101, 104, 624 A.2d 857, 860 (1993). For these reasons, we reject plaintiff's construction of the ordinance.[3]

■ Next, plaintiff makes two related arguments arising out the Town's post-permit decision that the 1994 ordinance amendments did not go into effect. Although section VII(1) of the ordinance requires the landowner to show only that the alternative septic system is "consistent with the protection of the public health and safety," in practice the Town construed the ordinance to mean that the landowner must show that the alternative design would provide equal or greater protection to public health and safety than a regular system. Thus, plaintiff argues that since the Town used the regular system standards from the 1994 ordinance amendment, and not those from the 1973 ordinance, the basis for comparison became wrong once the Town abandoned the 1994 standards. It asserts both that the selectboard made an error of law in relying on the 1994 standards and denied plaintiff due process of law because he was required to address equivalency with the 1994 standards, not those in the 1973 ordinance.

Defendant stresses that section VII never changed with the 1994 amendment to the 1973 ordinance. He responded with the affidavit of a

---

[3] Plaintiff also argues that section VII of the 1973 ordinance cannot be used to authorize an "alternate system"; that is, a sewage disposal system based on methodology other than soil absorption. Nothing in the language of section VII suggests such a limitation. In any event, we believe this argument goes to the merits and is beyond the scope of Rule 75 review.

member of the selectboard, who was also town health officer, stating, in relevant part, that "[t]he Technical Specifications of the 1994 amendments were more stringent and more detailed than the Technical Specifications of the 1973 septic ordinance." Thus, defendant argues that any system that provides equivalent protection of public health and safety to a system which meets the 1994 technical specifications automatically provides equivalent protection to a system that meets the 1973 technical specifications. Relying solely on the wording of the 1994 and 1973 ordinance provisions, plaintiff contests this argument, pointing out that the 1973 technical specifications required that any septic system be located at least 100 feet from a stream, and the 1994 technical specifications require only a 50 foot buffer for a stream.

Although there is superficial allure to plaintiff's position, we conclude that he did not meet his summary judgment burden. The risk underlying plaintiff's claim is that the effluent from defendant's sewage disposal system will pollute a nearby stream. Separation distance is only one factor in evaluating the extent of that risk. It may well be that the other design specifications are sufficiently stringent that a system designed to 1994 standards poses a lesser risk of polluting a stream fifty feet away than that posed by a system designed to 1973 standards, but one hundred feet from the stream. In response to defendant's evidence that the 1994 standards were more stringent, plaintiff raised hypothetical possibilities, with no evidence to support them. See, e.g., *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990) (opponent of summary judgment cannot rely upon conjecture or speculation). We conclude that plaintiff failed to demonstrate a disputed issue of material fact with respect to his due process and erroneous standards claim.

Plaintiff's fifth claim on appeal is that the standard set out in section VII is vague and therefore unconstitutional. A statute or ordinance is void for vagueness when it either forbids or requires the doing of an act in terms so vague that persons of common intelligence must guess at its meaning and differ as to its application. *Kimbell v. Hooper*, 164 Vt. 80, 88, 665 A.2d 44, 49 (1995). For purposes of analysis, we will assume that a void-for-vagueness challenge can be raised by the adjoining landowner.

In *Rogers v. Watson*, 156 Vt. 483, 491, 594 A.2d 409, 414 (1991), also a permit case, we noted that "[o]ur void-for-vagueness test is less strict where the regulation is economic and the landowner can seek clarification of its meaning or resort to administrative processes." We

found important that the landowners "had the opportunity to clarify their responsibilities." *Id.*; see also *Secretary of Natural Resources v. Irish*, 169 Vt. 407, 411-12, 738 A.2d 571, 576 (1999); *Benning v. State*, 161 Vt. 472, 484, 641 A.2d 757, 763 (1994). In this case, the meaning of section VII was clarified by the environmental engineering firm hired by the Town to require that the system applied for would provide an equivalent degree of protection to public health and safety to a system meeting the normal technical specifications. Both parties offered technical evidence to respond to the requirements of section VII. We believe that ordinary persons could understand what is required by section VII, and the parties did so in this case. Section VII is not void for vagueness.

We are no more persuaded by plaintiff's related argument that section VII lacks standards to contain the exercise of the selectboard's discretion and is therefore unconstitutional. In *In re Handy*, 171 Vt. 336, 764 A.2d 1226 (2000), we recently held that a permit statute which "provides absolutely no standard or guidance" for the exercise of discretion is unconstitutional. *Id.* at 349, 764 A.2d at 1238. We recognized, however, "that a standard sufficient to save the statute can be general, and can be derived from historical usage." *Id.* at 348, 764 A.2d at 1238. In this case, section VII contains a standard, albeit general, and the standard was made more definite by the announced decision to require equivalency of protection with systems designed to normal technical standards. We do not conclude that section VII is unconstitutional because it lacks adequate standards.

In summary, we conclude that there was no genuine issue of material fact raised to prevent the superior court from deciding the case on summary judgment. Plaintiff has not produced sufficient evidence to establish that the selectboard made an error of law in issuing the sewage disposal permit to defendant. See *Poplaski v. Lamphere*, 152 Vt. 251, 254-55, 565 A.2d 1326, 1329 (1989) (summary judgment is mandated under the plain language of V.R.C.P. 56(c) where, after an adequate time for discovery, a party fails to make a showing sufficient to establish the existence of an element essential to his case and on which he has the burden of proof at trial).

*Affirmed.*