### Michael D. LOVELAND v. John GORCZYK and Kathleen Lanman

[786 A.2d 418]

No. 00-495

November 7, 2001. Plaintiff Michael Loveland appeals from a superior court grant of summary judgment to defendants, John Gorczyk and Kathleen Lanman, in a case involving review of a prison discipline decision. Plaintiff contends that defendant Lanman, superintendent of the Newport correctional facility, failed to notify him of her appeal decision within the 30 day limit set forth in Department of Corrections (DOC) Directive 410.01(I)(2), and, as a result, he is entitled to expungement of the disciplinary conviction. The superior court ruled that the directive does not require notice to the inmate within 30 days and denied relief on that basis. We affirm.

The relevant facts are undisputed. Plaintiff was found guilty of a major disciplinary infraction on October 18, 1999, and appealed to the superintendent, who denied his appeal on November 16, 1999, but did not notify him of her decision at that time. On December 13, 1999, plaintiff filed a "complaint for the review of governmental action" in accordance with V.R.C.P. 75 in superior court, alleging that the DOC violated Directive 410.01(I)(2) by failing to "respond" to his appeal within thirty days as the language of the directive requires. The parties filed cross summary judgment motions, and the superior court granted summary judgment for defendants. The superior court held that "respond" does not re-

quire receipt, and that plaintiff's argument to the contrary would alter the regulation. This appeal followed.

We review this case under V.R.C.P. 75. See *Shuttle v. Patrissi*, 158 Vt. 127, 131-32, 605 A.2d 845, 848 (1992). The controversy in this case centers on the definition of "respond" as used in DOC directive 410.01(I)(2). This directive commands, "[t]he Superintendent will respond to the appeal within 30 days from the date the appeal was delivered by the offender to a staff member." DOC Directive 410.01(I)(2). Failure to respond results in the action being dismissed and expunged from the inmate's file. *Id.* Plaintiff argues that "respond," as used in the directive, must include notification of the action of the superintendent. Defendants argue that the superintendent responded when she decided the appeal; the superior court accepted this construction.

For three interrelated reasons, we agree with the interpretation of the superior court. First, we must defer to the Department of Corrections interpretation "[a]bsent compelling indications of error." See *In re Capital Investment*, 150 Vt. 478, 482, 554 A.2d 662, 665 (1988).*

Second, plaintiff is seeking an automatic expungement remedy for violation of a time limit, irrespective of the merits of his appeal. In the one comparable

---

* The dissent relies on the language of DOC Directive 410.01(M) to show a compelling indication of error because that section requires the superintendent to provide a copy of her decision to the inmate within seventy-two hours. This section supports our analysis because it does not contain an expungement remedy; the expungement remedy is reserved for a failure to respond to the appeal within the specified period. By its placement in a separate section, the notice responsibility is separate and not subject to the expungement remedy.

situation where such a remedy has been used in our law, "we have strictly construed the remedy to apply only when it clearly implements the . . . purpose" of avoiding indecision and protracted deliberation. *In re Newton Enterprises*, 167 Vt. 459, 465, 708 A.2d 914, 918 (1998) (implementing 24 V.S.A. § 4470(a), which requires a zoning board to act on a permit application within 45 days, or the permit is deemed to have been approved). This case is a clear demonstration of why we must apply the same construction rule to this regulation. Plaintiff received notice of the adverse decision in time to appeal it on the merits, but is seeking to prevail solely on the technicality of untimely notice. There is no indecision or protracted deliberation, and plaintiff was not prejudiced by the lack of notice.

Third, the superior court decision best comports with the common meaning of the term in the regulation. The common definition of the word "respond" is "to reply or answer." Random House Unabridged Dictionary 1640 (2d ed. 1987). The term does not require receipt of the answer or reply. Plaintiff would have a stronger case that notice is implied in the term if the directive required the superintendent to respond to the grieving inmate within the time limit. Instead, it requires that the superintendent "respond to the appeal within thirty days." We believe that the common meaning of the words chosen is that the superintendent must answer the appeal by deciding it within 30 days. Accordingly, we cannot find a compelling indication of error in defendants' interpretation of the regulation, and defendants' interpretation involves a strict construction that does not apply the expungement remedy beyond its purpose.

*Affirmed.*

**Skoglund, J.,** dissenting. The majority correctly holds that Department of Corrections (DOC) Directive 410.01(I)(2) requires the superintendent to decide an inmate's appeal of a disciplinary action within 30 days, but finds no ancillary obligation to communicate this decision to the inmate plaintiff. Because I believe that communication of the superintendent's decision to the inmate is a necessary element of the directive, I dissent.

The majority's opinion is based on three rationales. I fault all three. First, the majority opines that "[a]bsent compelling indications of error," interpretations of administrative regulations or statutes by the agency responsible for their execution will be sustained on appeal. See *In re Agency of Administration*, 141 Vt. 68, 74-75, 444 A.2d 1349, 1351-52 (1982). The DOC maintains that it has no obligation under Directive 410.01(I)(2) to communicate the superintendent's decision to the inmate. The majority finds no "compelling indications of error" in this interpretation of Directive 410.01(I)(2) and thus defers to the DOC's assertion. Because the DOC's own policies, directives and standardized forms contradict this assertion, I find "compelling indications" that the current position of the DOC is in error.

The DOC prescribes specific, welldefined disciplinary proceedings for an inmate charged with violating a rule of the facility. According to DOC Inmate Discipline Policy #410, "[t]he report, findings, determination and recommendation of the hearing Officer shall be reviewed by the Disciplinary Committee and the Superintendent/District Manager and shall be given to the offender in a reasonable time after the hearing." Inmate Discipline #410(2)(h). If the inmate wishes to file an appeal, he must obtain the "Disciplinary Appeal and Receipt" form and deliver the completed form to a DOC employee. The employee who receives the appeal fills in the appropriate signature, date and time lines on the form, forwards it to be included with the appeal package, and gives the offender a copy of the form as a receipt.

As noted above, the "Disciplinary Appeal and Receipt" form plaintiff used to file his appeal has signature, date and time lines for the department employee who accepts the appeal to indicate when it was received. It next has a section for the superintendent to indicate his or her decision. Specifically, the form contains a box that is checked for either of two results: "I have considered your appeal and my decision remains unchanged" or "I have considered your appeal and take the following action." The form then provides a list of possible options: dismissal, lower sanctions, reduce charge, order new investigation, order rehearing. Finally, the form contains a signature line for the "[e]mployee who returns this appeal response to offender" and space to indicate the date and time it was returned to the offender. The expectation that the superintendent's decision will be returned to the offender as part of the disciplinary process is apparent on this form and is evidence of the procedural expectations under the correlative DOC Directive 410.01(I)(2). The form alone provides compelling indication that the interpretation of the administrative regulation offered by DOC in this appeal is in error.

Further support for the above proposition is found in DOC Directive 410.01, which provides instructions to appropriate individuals on details and due process requirements in the disciplinary process. After defining the terms and personnel titles involved in a disciplinary process, the directive details the filing procedures for a disciplinary report and the hearing that follows, and describes the disciplinary committee's review "within two working days," of the hearing officer's determination and recommendation when there has been a finding of a major violation. Directive 410.01(F)(2). The directive also requires the superintendent/district manager's review of every disciplinary action, see Directive 410.01(H), and then goes on to describe the appeal process available to the offender. Directive 410.01(I). In subsection (I)(2) we find the language at issue:

> The Superintendent/District Manager will respond to the appeal within 30 days from the date the appeal was delivered by the offender to a staff member. Failure to respond to the appeal within 30 days will result in the dismissal of the disciplinary action and expungement from the inmate/offender's file.

Finally, Directive 410.01(M), entitled "Disciplinary Reports," states: "[t]he offender shall be provided a copy of the Hearing Officer's report, the decision of the Disciplinary Committee and the final action of the Superintendent/District Manager within 72 hours after the Superintendent/District Manager's final action." Directive 410.01(M)(2).

Subsection M appears to answer the question presented in this appeal, though plaintiff did not make this argument to the court. Nor did the DOC mention this time constraint or explain why it did not apply. This overlooked section of the directive apparently sets a time limit on when an offender is to be provided with the documents that issued in his disciplinary action[1] and is another compelling indication that the DOC interpretation of its regulations in this case is error.[2]

---

[1] The majority dismisses the significance of subsection M to our argument because it does not contain an expungement remedy. Whether or not this subsection contains an expungement remedy is inconsequential to the obvious policy, evidenced by this subsection, of the DOC that inmates should be made promptly aware of the superintendent's final action in their appeals.

[2] I take judicial notice of Directive 410.01 in its entirety — the directive relied on,

The majority's second rationale for upholding the trial court's decision is based on an examination of the automatic expungement remedy prescribed for violations of the directive's 30-day time limit. The majority holds that this Court must apply the same rule of construction to the DOC policy's expungement remedy that was used in *In re Newton Enterprises*, 167 Vt. 459, 708 A.2d 914 (1998) (implementing 24 V.S.A. § 4470(a), which requires a zoning board to "render its decision" on a permit application within 45 days or the permit is deemed approved). Specifically, we must strictly construe the expungement remedy to apply only when it clearly implements the statutory purpose of avoiding "indecision and protracted deliberation." *Newton*, 167 Vt. at 465, 708 A.2d at 918. The Court finds no indecision or protracted deliberation and no prejudice to plaintiff by the department's failure to give plaintiff notice of its decision because he "received notice of the adverse decision in time to appeal it on the merits."

A correction is in order. The plaintiff only learned that the superintendent had made a decision on his appeal when the DOC provided a copy of the "Disciplinary Appeal and Receipt" form attached to its summary judgment motion in plaintiff's Rule 75 action filed in superior court on June 28, 2000 — 250 days after he filed his disciplinary appeal with the superintendent. While this inordinate delay in communicating the superintendent's decision to the plaintiff did not prevent him from filing his Rule 75 action, it does implicate Directive 410.01(I)(3), which recognizes that while appeals to the superintendent/district manager will delay access to the courts, "in no case will this exceed 30 days." This promise of minimal delay before a plaintiff inmate can take his case outside the walls of the

---

in part, by both parties in this appeal. See V.R.E. 201.

correctional facility and into a court of law seems difficult to achieve if the superintendent's disposition of the appeal is not revealed to the inmate.

Furthermore, inmate's case before the superior court was a Rule 75 action seeking the mandatory expungement remedy found in the DOC directive. It remains to be seen when the inmate would have ever received notice of the superintendent's decision on his appeal had he never filed the Rule 75 action. The inmate has thus never been afforded an appeal to a court of law on the merits of his disciplinary violation, and the DOC is in violation of its directive mandating disposition of appeals within 30 days to prevent delays in access to the courts. As far as the inmate was concerned there was indeed a significant period of "indecision or protracted deliberation."

In espousing application of a strict construction rationale to the expungement remedy in Directive 410.01(I)(2), the majority looks to cases in the area of municipal planning and development that were decided under statutes that provide a time-sensitive remedy for indecision or protracted deliberation on the part of municipal bodies.

In *Glabach v. Sardelli*, 132 Vt. 490, 321 A.2d 1 (1974), the Court addressed the issue of whether the remedial provision of 24 V.S.A. § 4470(a) is triggered when a board of adjustment renders its decision at a meeting but does not notify the appellant of its decision within the forty-five day period established by the statute. See 24 V.S.A. § 4470(a). The Court held that "[o]nly when both decision and notification are made within the forty-five day period is the judgment rendered." *Glabach*, 132 Vt. at 495, 321 A.2d at 5.

In *Hinsdale v. Village of Essex Junction*, 153 Vt. 618, 572 A.2d 925 (1990), we reaffirmed the *Glabach* holding but narrowed the rationale, holding that, because the purpose of the statute's notice requirement was met when the

board orally announced its decision to the plaintiff, the failure of the board to mail plaintiff a written decision within the 45-day time period prescribed by § 4470(a) did not. entitle him to the deemed-approval remedy. "The decision in this case was rendered within the statutory period; therefore, plaintiff is not entitled to the deemed-approval remedy." *Id.* at 625, 572.A.2d at 929.

In *In re White*, 155 Vt. 612, 587 A.2d 928 (1990), the Court considered a different statute, 24 V.S.A. § 4407(2), which states: "[t]he board of adjustment shall act to approve or disapprove any such requested conditional use within sixty days after the date of the final public hearing held under this section, and failure to so act within such period shall be deemed approval." Notwithstanding the difference in the statutory language, the Court in *White* adhered to the *Hinsdale* mandate and held there must be notice given in order to satisfy the statute and avoid the statutorily-imposed remedy. Like Hinsdale, White received actual oral notice of the board's decision, but claimed the oral decision was not "final" until issued in writing. We held that "once a board decision is 'rendered' — i.e., the board has made a decision and communicated it to the applicant, as was done here — the applicant is not entitled to the deemed-approval remedy." *In re White*, 155 Vt. at 616, 587 A.2d at 930 (citing *Hinsdale*, 153 Vt. at 624-25, 572 A.2d at 928-29).

These decisions all acknowledged the common sense requirement that claimants be in some way informed of the decision in order to avoid the mandatory remedy for "indecision."

Then, in *Leo's Motors, Inc. v. Town of Manchester*, 158 Vt. 561, 564, 613 A.2d 196, 199 (1992), we reevaluated our interpretation of § 4470(a)'s notice requirements in order to make allowances for the "informality that often typifies municipal proceedings" and the desire that "negligence or inadvertence of a

municipal employee unrelated to the timeliness of the decisional process ought not defeat the strong policies in favor of phasing out nonconforming uses." In *Leo's Motors, Inc.*, the plaintiff failed to receive notice of the zoning board's decision within the statute's 45-day period because a municipal employee neglected to put the decision in the mail. This Court did not think it appropriate to award the mandatory deemed-approval remedy when the failure to send a copy of the decision was inadvertent and not the result of any official policy or purpose to withhold notice.

On this record we don't know if the superintendent's failure to notify the inmate was due to inadvertence or negligence or whether it was deliberate. That issue was never argued. However, the majority has accepted DOC's argument that it is official DOC policy that inmates are not entitled to receive the superintendent's response to their appeals. It would seem that this Court's allowances for neglect or inadvertence would not be appropriate in the face of this policy.

The DOC directive at issue in this case is not as specific as the statute in *Hinsdale*. Nor is the directive as vague as § 4407(2), which merely requires the board to "act to approve or disapprove" the action. Instead, DOC Directive 410 commands that the superintendent "respond" to the appeal — a far more affirmative and specific requirement than that laid out in § 4407(2). The Court's prior interpretations of similar mandates requiring notice to claimants should guide our interpretation of the DOC directive in this case. I agree that, in an informal municipal proceeding, the important public policy behind zoning laws should not be sacrificed to an inadvertent mistake by an employee unrelated to the decision making process. See *Leo's Motors*, 158 Vt. at 564, 613 A.2d at 199. However, with no finding of inadvertence or negligence to explain the delay in

"responding" to inmate's appeal, and with the clear statement that DOC policy includes withholding that response, I suggest that respect for inmate rights is what is being sacrificed under DOC policy. The expungement remedy becomes a myth.

The third rationale relied on by the majority is the meaning of the term "respond." The common meaning of "respond" cited by the majority is "to reply or answer." No inmate can be more confused than I to learn that the reply or answer can be whispered to the wind and still satisfy the directive.

Rehabilitation of inmates takes many forms. I assume that engendering respect for laws and regulations is a major component of any rehabilitation objective. And I suspect that simulation of procedures of a free society within the walls of a prison is thought to advance the rehabilitative goals of the institution. This premise finds support in the creation of written policies and procedures which govern various aspects of institutional life in our correctional facilities. If rehabilitation includes instilling a respect for the law and its requirements in those who have been imprisoned for violating the law, then correctional policies and regulations that purport to give inmates expectations of legal process and procedures should be meticulously adhered to by those who administer them.

> Indeed, it is pressed upon us that the proceedings to ascertain and sanction misconduct themselves play a major role in furthering the institutional goal of modifying the behavior and value systems of prison inmates sufficiently to permit them to live within the law when they are released.

*Wolff v. McDonnell*, 418 U.S. 539, 562-63 (1974).

While the legislature may have created a mandatory expungement remedy to avoid indecision and protracted deliberation in certain administrative procedures, there may be a broader, rehabilitative intent behind the expungement remedy found in the DOC directive. The DOC policies and directives impose requirements on superintendents as well as on inmates. The fact that there are consequences for a superintendent who fails to comply with the DOC policies and directives supports a conclusion that the DOC regulations are fair to all. Common sense and the common definition of the term "respond" are suspended in the DOC interpretation of the directive and our decision to affirm. This result can only impair rather than enhance the disciplinary process as a rehabilitative tool.

As Justice Douglas noted in *Wolff*, "[e]very prisoner's liberty is, of course, circumscribed by the very fact of his confinement, but his interest in the limited liberty left to him is then only the more substantial." 418 U.S. at 594 (Douglas, J., concurring). Loveland had reasonable expectations that the important procedural rights the DOC directive seems to grant him would be applied rationally in his case, and, that if his jailers' interpretations of those rights were puzzling, that a court of law would interpret the directive in a common sense manner.

I dissent. I am authorized to state that Justice Johnson joins this dissent.