## State of Vermont
## Superior Court—Environmental Division

}

**In re Hurricane Auto CU Application**    }    Docket No. 92-7-11 Vtec

}

## Decision on the Merits

Royce M.J. Lussier d/b/a Hurricane Auto, Inc., (Applicant) has appealed a decision by the Town of Berlin Development Review Board (the DRB) denying a request for a zoning permit to develop an automotive repair business at 34 Chandler Road (the Property) in the Town of Berlin, Vermont (the Town). In this appeal, Applicant asserts that its proposed use meets the requirements for conditional use approval in the Town of Berlin Zoning Regulations (the Regulations). Interested Persons Douglas Shiok and Nancy Evans-Shiok (Neighbors) oppose the application, arguing the proposed use does not meet all of the requirements for conditional use approval.

In the decision on appeal, the DRB concluded that the proposed automotive repair use fits within the definition of a "cottage industry," a conditional use in the Rural Residential Zoning District (the R-40 District), the zoning district in which Applicant's property is located. See Regulations § 2.04, Table 2.03. The DRB also concluded that the proposed use meets all of the Regulations' conditional use criteria except for Criterion 12, that such use must not "adversely affect . . . [t]he character of the area affected; neighboring uses." Regulations § 5.06(A)(12); see also 24 V.S.A. § 4414(3)(A) (requiring municipalities adopting conditional use review to consider the effect of a use on the character of the area affected). Because Applicant's Statement of Questions raises only the issue of whether its proposed use will "negatively impact the character of the area in which it is sited," it is the only issue we have before us for review in this de novo proceeding. (See Statement of Questions, filed Aug. 17, 2011.)

The Court conducted a site visit on June 21, 2012 to the Property, immediately followed by a single day merits hearing at the Superior Court, Environmental Division's courthouse in Berlin, Vermont. Appearing at the site visit and trial were Royce M.J. Lussier and his attorney Paul S. Gillies, Esq.; Robert Halpert, Attorney for Appellee Town of Berlin; and Interested Persons Margaret D. Irish, Douglas R. Shiok, Nancy Evans-Shiok, and Eduardo Hernandez, all appearing pro se.

Based upon the evidence presented at trial, including that which was put into context by the site visit, the Court renders the following Findings of Fact and Conclusions of Law.

## Findings of Fact

1.      The Property, located at 34 Chandler Road in the Town of Berlin, Vermont, is owned by Gregory B. Rausch and is approximately 2.4 acres in size.

2.      The property includes a single family home and a garage.

3.      The Property is located in the Town's R-40 District.  The area immediately across Chandler Road is located in the Town's Light Industrial District.

4.      Mr. Royce M.J. Lussier and his corporation, Hurricane Auto, Inc., provide automotive repair services.

5.      Hurricane Auto, Inc. does not offer body work services.

6.      To house the proposed automotive repair services, Mr. Lussier proposes to modify the existing garage structure by tearing down a damaged portion, thereby reducing its size, and repairing and rebuilding the remaining structure which will act as a commercial garage.

7.      The garage and repair operations will have two overhead doors which face the southern side of the Property.

8.      An existing driveway provides access to the Property.

9.      The louder noises that the automotive repair work will generate include hammering or banging on steel and the use of impact wrenches which are commonly used to remove and install wheels during winter or summer tire change-over.  Car engines will be "revved" to diagnose problems and ensure that they function properly.

10.     Mr. Lussier has a personal race car which is louder than the average passenger vehicle. Mr. Lussier plans to work on his race car in the garage.

11.     There will be two vehicle lifts located inside the garage.  These two lifts will allow mechanics to work on two vehicles simultaneously.  The lifts will generate clicking noises; however, this noise will not be as loud as the hammering or impact wrenches.

12.     All repair work will be conducted inside the garage.  The garage doors will be closed during work except during warm weather.

13.     Customers will be allowed to wait in seats in the office.

14.    To reduce the level of noise emanating from the garage, Mr. Lussier will insulate the garage walls and then cover the insulation with sheet rock.  The garage will also include insulated overhead doors.

15.    Potential odors from the automotive repair work will include welder smoke, gasoline and antifreeze vapors, and exhaust from vehicles.

16.    Vehicle exhaust will be emitted through a stack in the garage roof.

17.    Renovations to the garage include a new poured concrete floor without any floor drains.

18.    Garage workers will collect waste oil in 55 gallon drums to be burned in a waste oil furnace.

19.    The facility will recycle off-site the other hazardous materials commonly associated with automobiles such as gasoline and antifreeze.  Limited on-site storage of hazardous materials will take place between recycling events.

20.    Typically, the automobile repair operations will work on approximately 15 vehicles weekly.  During tire change-over time in the fall (September/October) and spring (April/May), however, approximately 8 cars will have tires changed/switched each day (approximately 40 vehicles per week).

21.    Tow trucks and delivery trucks will travel to and enter the Property from the Route 12 end of Chandler Road.

22.    There will be no outside storage of parts (including tires), portions of vehicles, or salvaged or junk vehicles.

23.    Typical hours of operation will be Monday through Friday from 9 am to 5 pm.  Some evening hours may be required to timely complete repairs and to work on Mr. Lussier's personal race car.  All work activities will stop at 8:00 pm.

24.    At the present time, Mr. Lussier is the sole mechanic.  Mr. Lussier's son or another mechanic may join the business in the future.  Molly Irish is the bookkeeper for the automotive repair business.  Bookkeeping is conducted on-site.

25.    Some automotive sales will take place on-site.  No more than 5 cars will be sold annually.  Cars which are for sale will be parked on the side of the shop facing Chandler Road. Approximately one to three cars will be for sale at any one time.

26.    There are no wetlands on the Property.

27.    There is a small brook on the west side of the Property.

28.    There is no wildlife habitat on the Property.  Birds frequent the neighboring Shiok property.

29.    All proposed repair activities will take place in an existing structure that will be or is currently being renovated.

30.    Agricultural activities are not presently taking place on the Property, and there is no history of agricultural use at the Property.

31.    Penniman's horse farm is located to the south on Chandler Road.  The farm generates some truck and trailer traffic.

32.    Mr. Lussier resides in the home located on the Property.

33.    Douglas R. and Nancy Evans Shiok own a residential property abutting the Property's north boundary.

34.    Approximately 40 years ago the Property was used as a Ford dealership.  The dealership was active for about 10 years and included outside display of equipment, tractor and truck noise, and garage use.

35.    Approximately 30 years ago the Property was used as a furniture store.  This use lasted for 3 or 4 years.

36.    After the furniture store, the Property was used for auctions.  Auctions were held on-site approximately once per week.  The auctions generated considerable vehicle traffic, parking was very crowded, and some attendees parked their vehicles in neighboring driveways.  The auctioneer used an amplification device to project his voice in the general area of the Property.

37.    Following the auction use, the subject property was again used for the sale of furniture and then, about 10 years ago, the Property was again used for auctions.  During this same time period the Property was used for stripping and re-staining furniture.

38.    About 3 or 4 years ago the roof of the on-site garage structure collapsed, and since then no use occurred at the site.

39.    Neighbors observed offensive odors and noises associated with former uses of the Property.

40.    R.E. Tucker's commercial gravel business and Bill Lyons' gravel pit are located in the vicinity of the subject site.  Truck traffic associated with these businesses travels past the Property daily Monday through Friday.  A lesser amount of truck traffic takes place on Saturdays.  There is some loud brake noise and dust associated with this truck traffic.

41.     The Berlin volunteer fire department station is located in the area of the Property.

42.     Immediately across Chandler Road from the Property there is presently an apartment house comprised of three apartments.  This property and structure was formerly the Riverton school house.

43.     A store and gas station are located in close proximity to the Property.  At the present time these commercial uses are not open for business, however, they have been active periodically in the past.

### Conclusions of Law

The legal question presented in this appeal is whether Applicant's proposed use of the Property will adversely affect the "character of the area."  The language of both the Regulations and the enabling statute guide our understanding as to what "character of the area" refers.  See In re White, 155 Vt. 612, 619–20 (1991) (stating that the criteria for conditional use approval enumerated in 24 V.S.A., Chapter 117 "are the floor below which no town can go if it wants to do conditional use zoning").  The Regulations require that a conditional use not adversely affect "[t]he character of the area affected; neighboring uses."  Regulations § 5.06(A)(12).  The Regulations also reference "[t]he essential character of the neighborhood or district in which the proposed use is located," including "the existing uses as well as the goals articulated for the district."  Id.  In 24 V.S.A. § 4414(3)(A)(ii), the character of the area affected is defined "by the purpose or purposes of the zoning district within which the project is located, and specifically stated policies and standards of the municipal plan."

Accordingly, to identify the character of the area affected by Applicant's proposed use, we consider the purposes and goals of the zoning district in which the proposed use is located and any applicable policies and standards in the municipal plan, as well as the uses neighboring the proposed use.

The Property upon which Applicant proposes his automotive repair business lies in the Town's R-40 District, for which the Regulations establish the following purpose:

> To protect fragile natural resources, including wetlands, surface waters and wildlife habitat; promote continued agricultural activities; prevent strip development along major road corridors; and encourage moderate density residential development, including clustered housing, and limited commercial uses in appropriate locations.

Regulations § 2.04, Table 2.03.

5

The proposed automotive repair business aligns with the R-40 District purposes. The proposed use will not adversely impact fragile natural resources. While we were provided with some evidence of surface water and wildlife in the area of the Property there was no evidence presented of potential adverse impact to these resources. Parties provided the Court with no evidence of wetlands on or surrounding the Property. Applicant identified a brook toward the west side of the Property. The proposed automotive repair activities will take place within an existing structure. Applicant proposes to reduce the size of the structure and improve the re-sized structure with a new poured concrete floor without floor drains. Thus, liquid pollutants generated by the automotive repair operations will be contained and collected. Therefore, the proposed use does not pose a threat of an adverse impact to the nearby brook. Under these circumstances, there will be no adverse impact caused by the automotive repair use on surface waters.

Applicant acknowledges that at times deer cross the western edge of the Property. This area was not identified as a deer wintering yard or specifically designated wildlife habitat. Douglas Shiok testified during the hearing that the proposed use will negatively impact wildlife habitat on his property and the surrounding neighborhood. Mr. Shiok, however, failed to provide evidence of the existence of specific wildlife habitat on the subject property or in the surrounding neighborhood. Mr. Shiok introduced into evidence Shiok Exhibit 3 and Shiok Exhibits 11a and 11b which were represented as pictures showing wildlife habitat areas in the Shiok backyard. Mr. Shiok also testified that birds frequent his backyard. While these pictures show the picturesque setting of the Shioks' backyard, there was no credible evidence that these areas represented identifiable wildlife habitats.

As discussed above, the proposed automotive repair activities will take place in an existing structure, undergoing or planned to undergo renovations. The proposed use does not call for any trees to be cut or for the disturbance of any undeveloped areas on the Property. The proposed use will generate noise; however, no credible evidence was offered demonstrating that this noise will have an adverse impact on wildlife or wildlife habitat. Furthermore, all hazardous materials will be contained, collected, temporarily stored on-site, and recycled off-site. Accordingly, we conclude that the proposed automobile repair use will not adversely impact wildlife habitat, to the extent any exists.

6

As for promoting continued agricultural activities, the Property is not currently used for agriculture, and there is no evidence that the Property has a history of agricultural use. Penniman's horse farm is located to the south of the Property on Chandler Road. There is no evidence that the proposed automotive repair use will impact the horse farm. We therefore conclude that the proposed use will not adversely impact continued agricultural activities.

The proposed use is not a "strip development," but rather a single use of automotive repair located in a stand-alone single structure. Additionally, Mr. Lussier will continue to reside in the single family residence located on the Property. We therefore conclude that there will be no impact on the density of residential development.

The proposed use of an automotive repair business is a "limited commercial use." Mr. Shiok testified that the area in which Applicant's proposed use is located is a quiet residential area and that Applicant's proposed commercial use is out of character with the type of development existing in the area. There is, however, considerable evidence of existing commercial activity and its associated noise in this area of the Town, including two gravel pits, a horse farm, and the truck traffic associated with these activities. In addition, there are other noise impacts in this area of Town from a volunteer fire department station and an apartment house. This area of Town also previously included a convenience store and gas station, which are presently inactive. The Regulations at issue here protect fragile natural resources, agriculture and residential use. Thus, we review this issue of the character of the area with these protections in mind. We are also mindful that each conditional use approval allowing commercial activities will at some point have an aggregate impact which changes the character of the area. Our review of the evidence before us, however, leads us to determine that this area of Town can accommodate the proposed automotive repair use and remain an area of limited commercial use. Taking all the evidence into account, we conclude that the Property is an appropriate location for the limited commercial use of automotive repair.

Lastly, the Court was not presented with any evidence of specifically stated policies and standards of the municipal plan which would be adversely affected by the proposed automotive repair use. We therefore conclude that the project as proposed will not adversely affect any specifically stated policies or standards.

7

### Conclusion

For the reasons discussed above, we conclude that Applicant's proposed automotive repair use at the Property will not adversely affect the "character of the area." Consequently, we also conclude that Applicant's proposed automotive repair use meets the requirements for conditional use approval in the Town of Berlin Zoning Regulations as the effect on the character of the area was the sole basis for denial by the Town.[1] We condition our approval on the following requirements:

1. Hours of operations will be Monday through Friday, 9:00 am to 5:00 pm with occasional evening hours not to exceed 8:00 pm; no weekend business activities.

2. No more than 5 vehicles may be sold in a single calendar year (January 1 through December 31).

3. On-site parking is limited to 5 vehicles all located on the southerly side of the garage.

4. All repair work will be conducted inside the garage with the overhead doors closed (doors may be open for limited periods during extremely hot weather).

5. No outside storage of parts (including tires), portions of vehicles, or salvaged or junk vehicles.

6. All hazardous materials will be regularly recycled off-site, and all exhaust will be vented through the roof of the garage.

---

[1] At the conclusion of the merits hearing, the Town suggested that the Applicant must also show that the proposed use meets two additional standards to be granted Conditional Use approval. These two standards are stated in Table 2.03 of the Regulations as follows:
  1. Such use is of the same general character as those permitted or allowed as conditional uses in the district, and
  2. Such use will not be detrimental to the other uses within the district and the adjoining land uses.
We note that compliance with these standards was not a part of Appellant/Applicant's Statement of Questions and no other party cross-appealed the DRB's decision. Thus, these additional standards are not before the Court. As addressed above, we conclude that the DRB determined that the proposed use meets all of the Regulations' conditional use criteria except for Criterion 12, character of the area. Having now determined that the proposed use will not adversely affect the character of the area, conditional use approval is warranted.

This matter is remanded to the Town of Berlin Administrative Officer to complete the ministerial act of issuing a zoning permit pursuant to Regulation § 5.10 that is consistent with and includes the conditions set forth in this opinion and the unappealed portions of the DRB decision.

A Judgment Order accompanies this Decision. This completes the current proceedings before this Court.

Done at Berlin, Vermont, this 12th day of October, 2012.


_____

Thomas G. Walsh, Environmental Judge